**UNITED STATED DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOSHUA NEWTON,

            Plaintiff,

  -against-

RONALD MEYER and NBC UNIVERSAL
MEDIA LLC,

            Defendant.

Case No. 1:22-cv-00540-AT

**MOTION TO DISMISS**

**ORAL ARGUMENT REQUESTED**


**DEFENDANT NBCUNIVERSAL'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFF'S THIRD AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

RELEVANT BACKGROUND ........................................................................................ 3

ARGUMENT .................................................................................................................... 5

    I.     Mr. Newton Fails to Allege Facts Supporting An Inference of NBCU's
         Liability.............................................................................................................. 6

         A.     Mr. Newton Has Not Alleged That NBCU Could Reasonably
             Anticipate Mr. Meyer's Alleged Actions.................................................. 7

         B.     Mr. Meyer's Alleged Actions Cannot Be Imputed to NBCU
             Because They Were Motivated by Purely Personal Reasons and
             Did Not Benefit NBCU............................................................................ 8

    II.    Mr. Newton Fails To State a Claim for Breach of Fiduciary Duty
         (Count 1). .......................................................................................................... 10

    III.   Mr. Newton Fails to State a Claim for Fraudulent Inducement (Count 2). ......... 13

         A.     Mr. Meyer's Purported Misrepresentations Are Non-Actionable. .......... 13

         B.     Mr. Newton Fails to Adequately Plead Scienter..................................... 16

         C.     Mr. Newton Fails to Adequately Plead Reasonable Reliance. ................ 17

         D.     Mr. Newton Fails to Plead Out-Of-Pocket Damages.............................. 18

    IV.   Mr. Newton Fails to State a Claim for Negligent Misrepresentation
         (Count 3). .......................................................................................................... 19

         A.     Mr. Newton Fails to Identify the Existence of a Special
             Relationship. .......................................................................................... 20

         B.     The Alleged Misrepresentations are Non-Actionable Statements of
             Opinion or Puffery. ................................................................................ 21

         C.     Mr. Newton Fails to Plead Reasonable Reliance..................................... 22

         D.     Mr. Newton Fails to Allege Out-Of-Pocket Damages............................ 23

    V.    Mr. Newton's Claims Against NBCU Should Be Dismissed With
         Prejudice. .......................................................................................................... 23

CONCLUSION................................................................................................................ 25

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................... 5, 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................ 6

*Bowman v. State*,
   781 N.Y.S.2d 103 (N.Y. App. Div. 2004) ..................................................... 7, 8, 10

*Bruckmann, Rosser, Scherrill & Co., L.P. v. Marsh USA Inc.*,
   885 N.Y.S.2d 276 (N.Y. App. Div. 2009) ..................................................... 13

*Burgundy Basin Inn, Ltd. v. Watkins Glen Grand Prix Corp.*,
   379 N.Y.S.2d 873 (N.Y. App. Div. 1976) ..................................................... 16

*Calvin Klein Trademark Trust v. Wachner*,
   123 F. Supp. 2d 731 (S.D.N.Y. 2000) ........................................................... 11

*Capricorn Invs. III, L.P. v. Coolbrands Int'l, Inc.*,
   886 N.Y.S.2d 158 (N.Y. App. Div. 2009) ..................................................... 22

*Clarex Ltd. v. Natixis Securities America LLC*,
   2013 WL 2631043 (S.D.N.Y. June 11, 2013) ............................................... 11

*Conde Panama LLC v. AECOS, Ltd.*,
   2020 WL 2834858 (S.D.N.Y. June 1, 2020) ................................................. 9, 10

*Connaughton v. Chipotle Mexican Grill, Inc.*,
   23 N.Y.S.3d 216 (N.Y. App. Div. 2016). ...................................................... 13

*D. Penguin Bros. Ltd. v. City Nat. Bank*,
   587 F. App'x 663 (2d Cir. 2014) ................................................................... 24

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
   375 F.3d 168 (2d Cir. 2004) ......................................................................... 17

*Facie Libre Assocs. I, LLC v. SecondMarket Holdings, Inc.*,
   961 N.Y.S.2d 44 (N.Y. App. Div. 2013) ....................................................... 23

*Foman v. Davis*,
   371 U.S. 178 (1962)....................................................................................... 23

*Friedman v. Anderson*,
   803 N.Y.S.2d 514 (N.Y. App. Div. 2005) ..................................................... 17

*Friedman v. Kuczkir*,
   272 F. Supp. 3d 613 (S.D.N.Y. 2017) ........................................................... 11

*Goldfine v. Sichenzia*,
   118 F. Supp. 2d 392 (S.D.N.Y. 2000) ........................................................... 6

*Hayden v. Cnty. of Nassau*,
180 F.3d 42 (2d Cir. 1999) ................................................................. 24

*Henneberry v. Sumitomo Corp. of Am.*,
415 F. Supp. 2d 423 (S.D.N.Y. 2006) ................................................. 13

*Imaging Int'l v. Hell Graphic Sys., Inc.*,
2007 WL 3227245 (N.Y. Sup. Ct. Oct. 29, 2007) ............................... 18

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
650 F.3d 167 (2d Cir. 2011) ............................................................... 24

*In re Merrill Lynch Auction Rate Sec. Litig.*,
851 F. Supp. 2d 512 (S.D.N.Y. 2012) ................................................. 18

*Int'l Fin. Corp. v. Carrera Holdings Inc.*,
920 N.Y.S. 2d 310 (N.Y. App. Div. 2011) ........................................... 15

*J.A.O. Acquisition Corp. v. Stavitsky*,
863 N.E.2d 585 (N.Y. 2007) ............................................................... 19

*J.P. Morgan Secs. Inc. v. Ader*,
9 N.Y.S.3d 181 (N.Y. App. Div. 2015) ................................................ 20

*Kyung Sup Ahn v. Rooney, Pace Inc.*,
624 F. Supp. 368 (S.D.N.Y. 1985) ...................................................... 12

*Lama Holding Co. v Smith Barney Inc.*,
668 N.E.2d 1370 (N.Y. 1996) .................................................. 18, 19, 23

*Legend Autorama, Ltd. v. Audi of Am., Inc.*,
954 N.Y.S.2d 141 (N.Y. App. Div. 2012) ............................................ 11

*McCann v. Varrick Grp. LLC*,
923 N.Y.S.2d 471 (N.Y. App. Div. 2011) .............................................. 9

*Moore Charitable Found. v. PJT Partners, Inc.*,
115 N.Y.S.3d 11 (N.Y. App. Div. 2019) ............................................... 10

*MTI/The Image Grp., Inc. v. Fox Studios E., Inc.*,
690 N.Y.S.2d 576 (N.Y. App. Div. 1999) ............................................ 19

*New York Fruit Auction Corp. v. City of New York*,
439 N.Y.S.2d 648 (N.Y. App. Div. 1981), *aff'd*, 439 N.E.2d 356 (N.Y. 1982) ............... 15, 16

*Northern Shipping Funds I, LLC v. Icon Capital Corp.*,
921 F. Supp. 2d 94 (S.D.N.Y. 2013) ................................................... 12

*Phoenix Ancient Art, S.A. v. J. Paul Getty Tr.*,
2018 WL 1605985 (S.D.N.Y. Mar. 29, 2018) ........................................ 6

*Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*,
605 N.E.2d 318 (N.Y. 1992) ............................................................... 20

**Page(s)**

*Rivera v. State,*
    142 N.E.3d 641 (N.Y. 2019) ................................................................ 7

*Roberts v. 112 Duane Assocs. LLC,*
    821 N.Y.S.2d 33 (N.Y. App. Div. 2006) ............................................. 9

*Saul v. Cahan,*
    61 N.Y.S.3d 265 (N.Y. App. Div. 2017) ........................................... 13

*Schlaifer Nance & Co. v. Estate of Andy Warhol,*
    119 F.3d 91 (2d Cir. 1997) ............................................................... 22

*Sheth v. New York Life Ins. Co.,*
    709 N.Y.S.2d 74 (N.Y. App. Div. 2000) ........................................... 22

*Sidamonidze v. Kay,*
    757 N.Y.S.2d 560 (N.Y. App. Div. 2003) ......................................... 15

*Spec. Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.,*
    33 F. Supp. 3d 401 (S.D.N.Y. 2014) ................................................... 6

*Starr Found. v. Am. Int'l Group, Inc.,*
    901 N.Y.S.2d 246 (N.Y. App. Div. 2010) ......................................... 23

*Staudinger+Franke GMBH v. Casey,*
    2015 WL 3561409 (S.D.N.Y. June 8, 2015) ............................... 11, 12

*Stuart Silver Assocs. v. Baco Dev. Corp.,*
    665 N.Y.S.2d 415 (N.Y. App. Div. 1997) ......................................... 17

*Thermal Imaging, Inc. v. Sandgrain Sec., Inc.,*
    158 F. Supp. 2d 335 (S.D.N.Y. 2001) ............................................... 12

*Weiss v. Hager,*
    58 N.Y.S.3d 403 (N.Y. App. Div. 2017) ..................................... 2, 8, 10

*Zahra v. Town of Southold,*
    48 F.3d 674 (2d Cir. 1995) ............................................................... 23

*Zutty v. Rye Select Broad Mkt. Prime Fund, L.P.,*
    2011 WL 5962804 (N.Y. Sup. Ct. Apr. 15, 2011) ............................. 17

**Statutes**

24 N.Y. Jur., Fraud & Deceit § 43 ............................................................ 16

**Other Authorities**

Christopher Rosen, "Ron Meyer Out as NBCUniversal Vice Chairman After Disclosing Affair,"
    *Vanity Fair*, Aug. 18, 2020, *available at* https://www.vanityfair.com/hollywood/2020/ 08/ron-
    meyer-out-nbcuniversal-affair-extortion ........................................... 2

Defendant NBCUniversal Media LLC ("NBCU") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff Joshua Newton's Third Amended Complaint ("TAC" or "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

NBCU is one of the world's leading media and entertainment companies. From 1995 to 2020, Defendant Ronald Meyer served as the head of the company's film studio, first as President and COO of Universal Studios and later as Vice Chairman of NBCU. During his tenure, he had a secret affair with a young actress identified in Mr. Newton's Complaint as "Jane Doe." In 2017, Ms. Doe introduced Mr. Meyer to Mr. Newton, her then-boyfriend and would-be collaborator, and the two of them began a campaign to pressure Mr. Meyer to help them develop film projects starring Ms. Doe. Their attempts to extort Mr. Meyer, using his former relationship with Ms. Doe as leverage, escalated over time. As Mr. Meyer tried to meet their increasing demands, he did not disclose to anyone at NBCU that he had had a relationship with Ms. Doe and was being extorted as a result. It was only in August 2020—when Mr. Newton, Ms. Doe, and another one of Ms. Doe's boyfriends threatened to file a public lawsuit against Mr. Meyer and NBCU—that Mr. Meyer finally revealed to NBCU his relationship with Ms. Doe and the pressure he was facing. Following his disclosure, NBCU and Mr. Meyer jointly announced that Mr. Meyer would leave the company, effective immediately. As Mr. Meyer explained at the time, the individuals extorting him over his relationship with Ms. Doe were attempting "to

falsely implicate NBCUniversal, which had nothing to do with this matter."[1]  It was with a "heavy heart" that he announced his departure.

Mr. Meyer's statement to the press was as true in 2020 as it is today:  NBCU had nothing to do with Mr. Meyer's relationship with Ms. Doe, nothing to do with his ensuing entanglement with Ms. Doe and her boyfriends, and nothing to do with any film projects Mr. Newton may have discussed with Mr. Meyer.  Yet, Mr. Newton now brings suit against both Mr. Meyer *and NBCU*, alleging that Mr. Meyer promised to help him with his film projects—that he even offered to act as Mr. Newton's talent agent, remarkably—and failed to deliver.  He brings claims for fiduciary breach, fraudulent inducement, and negligent misrepresentation, all premised on the alleged promises Mr. Meyer made him.

Whether or not Mr. Newton has a claim against Mr. Meyer, he has no claim against NBCU.  His causes of action against the company rest on the premise that NBCU is vicariously liable for Mr. Meyer's actions, but he fails to allege any facts that suggest Mr. Meyer's actions can be imputed to NBCU.  First and most critically, the Complaint fails to allege that Mr. Meyer's conduct—*i.e.*, having an extramarital affair with a young actress, attempting to cover up that affair, and allegedly promising to act as her boyfriend's "agent" to keep her quiet— was within the scope of his employment as Vice Chairman of NBCU.  It unquestionably was not. In addition, the Complaint does not allege—as it must, to sustain a vicarious liability theory— that Mr. Meyer's allegedly wrongful conduct was "generally foreseeable and a natural incident of [his] employment."  *Weiss v. Hager*, 58 N.Y.S.3d 403, 405 (N.Y. App. Div. 2017).  Thus, even if Mr. Newton could state a legally viable claim against Mr. Meyer (a dubious prospect,

---

[1] *See* Christopher Rosen, "Ron Meyer Out as NBCUniversal Vice Chairman After Disclosing Affair," *Vanity Fair*, Aug. 18, 2020, *available at* https://www.vanityfair.com/hollywood/2020/08/ron-meyer-out-nbcuniversal-affair-extortion.

given the fatal deficiencies that persist in his Third Amended Complaint), his claims against NBCU would still fail as a matter of law.

Mr. Newton's claims against NBCU fail for multiple additional reasons, not the least of which is that he has not identified how Mr. Meyer *or anyone else at NBCU* ever was or could have been a fiduciary to him. Nor has he alleged any promise or representation by Mr. Meyer *or anyone else at NBCU* that could support a claim for fraudulent inducement or negligent misrepresentation. For these reasons, explained in greater detail below, all of Mr. Newton's claims against NBCU must be dismissed. And because Mr. Newton has already had three opportunities to amend his complaint, the claims should be dismissed with prejudice.

## RELEVANT BACKGROUND

Mr. Newton is a self-described "award-winning film director, producer, and screenwriter," TAC ¶ 13, who was introduced to Mr. Meyer in December 2016 by Ms. Doe, his then-girlfriend. TAC ¶ 20.[2] At the time, Mr. Newton was working on a film project entitled "Nicole & O.J.," which was intended as a star vehicle for Ms. Doe. TAC ¶¶ 10, 21. In February 2017, Mr. Meyer met with Ms. Doe and Mr. Newton at Universal Studios—where, according to Mr. Newton, Mr. Meyer "praised" the script for another one of Mr. Newton's film projects ("The Will to Resist") and "offered his help to get it produced"; "show[ed] interested in . . . 'Nicole & O.J.' and offered to read the script"; and "invited [Mr. Newton] to contact [Mr. Meyer] directly at any time for his help and advice." TAC ¶ 21. Based on these vague statements of support, Mr. Newton alleges that he believed "that [Mr.] Meyer was offering to act as his talent agent." TAC ¶ 22. He further alleges that he entered into a "highly flawed" deal with the Ratner Group to finance part of "Nicole & O.J.," based on Mr. Meyer's assurances that shooting a portion of

---

[2] All references to Ms. Doe refer to the actress referred to by that pseudonym in Mr. Newton's Third Amended Complaint, *e.g.*, at TAC ¶ 10.

the film would help get it made. TAC ¶¶ 3–5. According to Mr. Newton, Mr. Meyer did not deliver on his promises. He "did not raise the rest of the financ[ing] of the film[,] . . . did not sell the film[,] . . . [and] did not find ways of distributing the film." TAC ¶ 6. He claims the project was damaged as a result, as was his reputation. TAC ¶ 7.

Mr. Newton spins a tale about Mr. Meyer's supposed motivations in his dealings with him—Mr. Meyer's alleged "conflict of interest motivated by his selfish interest in protecting his own career and financial interests by keeping secret his abusive sexual relationship with Jane Doe," TAC ¶ 86—but none of that has anything to do with NBCU. Nor, indeed, do any of the actions alleged in the Complaint. Mr. Newton tries to force a connection to NBCU by alleging that his "goal was to do business with NBCUniversal," TAC ¶ 8, but that cannot possibly implicate the company. He also suggests that NBCU should be liable simply because Mr. Meyer was employed by NBCU at the time of his alleged wrongdoing. *See* TAC ¶ 8 (alleging that Mr. Meyer attended a meeting at NBCU and sent emails to Mr. Meyer at his NBCUniversal address, that NBCU's screening facilities were used to view Mr. Newton's work, and that Mr. Newton's telephone calls to Mr. Meyer "were patched through by NBCUniversal employees who worked as Meyer's assistants"). What Mr. Newton does *not* allege is that Mr. Meyer was acting within the scope of his employment when he committed his allegedly wrongful acts— because he plainly was not.

Mr. Newton filed his initial Complaint in this case on January 21, 2022. ECF No. 5. On January 26, 2022, the Court ordered him to amend his Complaint due to his failure to properly allege diversity jurisdiction against NBCU. ECF No. 11. Mr. Newton filed his Amended Complaint on February 14, 2022. ECF No. 13. One week later, he filed a Second Amended Complaint to amend his jurisdictional allegations further. ECF Nos. 14, 14-1. The parties then

engaged in the Court's pre-motion letter-writing process: On April 18, 2022, counsel for NBCU sent a letter to Mr. Newton's counsel setting out several fatal deficiencies in his Second Amended Complaint. Mr. Newton sought leave to file a Third Amended Complaint on May 5, 2022, ECF No. 30, which the Court granted on May 16, 2022, ECF No. 33. He filed his Third Amended Complaint 11 days later, on May 27, 2022. ECF No. 36. That is the operative complaint.

Mr. Newton's Third Amended Complaint alleges three causes of action against NBCU: breach of fiduciary duty, fraudulent inducement, and negligent misrepresentation. His claims against NBCU are premised on the allegation that, although Mr. Meyer had "a serious undisclosed conflict of interest motivated by his selfish interest in protecting his own career and financial interests," TAC ¶ 86, he also "agreed to represent Mr. Newton as his actual or de facto talent agent," all while "acting in the course and scope of his actual or apparent authority on behalf of NBCUniversal." TAC ¶ 84. Even on this fourth attempt to plead viable claims, Mr. Newton's allegations against NBCU remain woefully deficient and unable to support a claim against the company. Thus, following an additional round of pre-motion letters, NBCU filed a letter with the Court on June 10, 2022, requesting leave to file a motion to dismiss the TAC. ECF No. 37. The Court granted NBCU's request on June 22, 2022. ECF No. 41. NBCU now moves for dismissal of all claims against the company, with prejudice.

## ARGUMENT[3]

A complaint will not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

---

[3] Unless otherwise indicated, all emphases are added and all internal citations and quotation marks are omitted.

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under Federal Rule of Civil Procedure 8, a claim

has facial plausibility when the factual allegations are sufficient to "raise a right to relief above

the speculative level." *Twombly*, 550 U.S. at 555.  Rule 8 "does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

A plaintiff must offer some factual substance, and "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In addition, in order to survive a motion to dismiss fraud claims, the Complaint must do

even more:  it must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b), by

pleading particular facts to support each element of each claim. *See Spec. Situations Fund III*

*QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 446 (S.D.N.Y. 2014)

("Claims of common law fraud must satisfy the requirements of Rule 9(b).").  Where a

complaint fails to properly set forth an element of a claim, that claim must be dismissed.

*Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 396 (S.D.N.Y. 2000); *Phoenix Ancient Art, S.A. v. J.*

*Paul Getty Tr.*, 2018 WL 1605985, at *8 (S.D.N.Y. Mar. 29, 2018) (granting motion to dismiss

where plaintiff did not plead all elements of the claim).

## I.    Mr. Newton Fails to Allege Facts Supporting An Inference of NBCU's Liability.

Mr. Newton, having not pled any misconduct by NBCU, relies entirely on Mr. Meyer's

alleged actions and the theory of respondeat superior to support his claims against the company.

But Mr. Newton has failed to plead an essential component of that theory:  that Mr. Meyer acted

within the scope of his employment at NBCU in committing his allegedly wrongful acts.

Instead, he makes a conclusory and sweeping claim that Mr. Meyer was "acting in the course and

scope of his actual or apparent authority on behalf of NBCUniversal as its Vice Chairman" in

allegedly agreeing to represent Mr. Newton as his "actual or de facto talent agent to obtaining

financing and distribution of Newton's films."  TAC ¶ 84.  Through such pleading, Mr. Newton

apparently attempts to impute every alleged act by Mr. Meyer in his interactions with

Mr. Newton to NBCU.  That effort, which is essential to his attempt to hold NBCU liable

through Mr. Meyer, fails as a matter of law for at least two reasons.  First, Mr. Newton has not

demonstrated that Mr. Meyer's actions were foreseeable or a natural incident of his employment

at NBCU.  Second, all of Mr. Meyer's alleged actions were taken purely in his own interest, and

none resulted in a benefit to NBCU.  Accordingly, all of Mr. Newton's claims against NBCU

must be dismissed.

### A. Mr. Newton Has Not Alleged That NBCU Could Reasonably Anticipate Mr. Meyer's Alleged Actions.

Having alleged no direct wrongdoing by NBCU, Mr. Newton appears to rely solely on a

theory of respondeat superior liability to proceed on his claims against NBCU.  His theory is that

NBCU is implicated because Mr. Meyer was employed by NBCU at the time of his alleged

wrongdoing, met with Mr. Newton at NBCU, and used his NBCU email address to communicate

with him.  TAC ¶ 8.  But the actions of an employee will not necessarily be found to be within

the scope of his employment under New York law simply because a plaintiff alleges a

connection between the time and place of the employee's alleged wrongdoing and his

employment.  *See Rivera v. State*, 142 N.E.3d 641, 645–46 (N.Y. 2019) (no basis to conclude

employee was acting within scope of employment when plaintiff alleged a connection between

the time and place of the alleged wrongdoing and the defendant's employment).  Rather, an

employer may be vicariously liable for its employees' tortious acts "only if they were committed

in furtherance of the employer's business and within the scope of employment."

*Bowman v. State*, 781 N.Y.S.2d 103, 105 (N.Y. App. Div. 2004).  That test is met only "so long

as the tortious conduct is generally foreseeable and a natural incident of the employment."  *Id*.

Here, Mr. Newton fails to plead *any* facts to support his contention that Mr. Meyer's

allegedly wrongful acts may be imputed to NBCU. He alleges that Mr. Meyer was acting as his "de facto talent agent." *See*, *e.g.*, TAC ¶¶ 8, 9, 22, 24, 34, 28, 81, 84, 85. But, other than the conclusory allegation that Mr. Meyer was "acting in the course and scope of his actual or apparent authority as Vice Chairman of NBCU," TAC ¶¶ 84, 86, 92—which the Court need not accept as true—the Complaint is devoid of any allegation, let alone facts, that Mr. Meyer's acting as Mr. Newton's talent agent was a foreseeable and natural incident of his employment. Nor is there any allegation that NBCU was aware of any prior conduct by Mr. Meyer that would put it on notice as to the foreseeability of such behavior. *Id.* It is simply not plausible that the scope of Mr. Meyer's duties as the Vice Chairman of NBCU included intentionally providing false information to prospective film producers for the purpose of covering up an extramarital affair. Mr. Newton has thus failed to allege that Mr. Meyer's conduct was "generally foreseeable and a natural incident of [his] employment." *Weiss*, 58 N.Y.S.3d at 405. All of his claims against NBCU fail on that ground, alone.

**B.**     **Mr. Meyer's Alleged Actions Cannot Be Imputed to NBCU Because They Were Motivated by Purely Personal Reasons and Did Not Benefit NBCU.**

New York law imposes additional hurdles that Mr. Newton must clear before imposing respondeat superior liability on an employer such as NBCU: specifically, the employee's alleged conduct will not be imputed to the employer where it was motivated by purely personal reasons and did not benefit the employer. *See Bowman*, 781 N.Y.S.2d at 105 ("If, however, an employee 'for purposes of his own departs from the line of his duty so that for the time being his acts constitute an abandonment of his service, the [employer] is not liable.'"). Mr. Meyer's claims against NBCU fail on this basis as well.

Under New York law, respondeat superior liability does not attach to an act motivated by purely personal reasons, *see*, *e.g.*, *Conde Panama LLC v. AECOS, Ltd.*, 2020 WL 2834858, at *3

(S.D.N.Y. June 1, 2020)—and here, Mr. Newton concedes that Mr. Meyer was acting *outside of the scope of his employment* and *in pursuit of his own interests* in his dealings with Mr. Newton. He makes repeated, explicit references to actions Mr. Meyer took to conceal his affair and protect his career—in other words, for purely personal motives. *See*, *e.g.*, TAC ¶¶ 10, 28, 32, 33, 37, 41, 74, 86, 101. When an individual is acting to serve his own interests instead of his employer's, and "the record is silent on any benefit [the employer] received from" the employee's actions, the employer will not be held liable for the employee's actions. *See Conde Panama LLC*, 2020 WL 2834858, at *3; *see also McCann v. Varrick Grp. LLC*, 923 N.Y.S.2d 471, 472 (N.Y. App. Div. 2011) ("security guard's act of lifting plaintiff onto a bar for the purpose of seeing if she could pop a balloon by sitting on it constitutes a "clear departure" from the scope of his purported employment"); *Roberts v. 112 Duane Assocs*. LLC, 821 N.Y.S.2d 33, 36 (N.Y. App. Div. 2006) (bank employee accepting bribes to assist in improper bank transactions not imputed to bank).

Mr. Meyer's supposed actions cannot be imputed to NBCU for the additional reason that they were not taken for the benefit of NBCU. Mr. Newton does not allege that they were taken for the benefit of the company, let alone identify any benefit NBCU is supposed to have received. Even taking Mr. Newton's allegations at face value, Mr. Meyer may not be said to have been acting within the scope of his employment, or in furtherance of the business of NBCU, while "covering up and facilitating" either "the abusive relationship that other titans of the film industry had had with Jane Doe," TAC ¶ 10, or "his own abusive relationship with Jane Doe," TAC ¶ 87. Rather, it is clear that Mr. Meyer departed from his duties for "solely personal

motives unrelated to the furtherance of [NBCU's] business." *Bowman*, 781 N.Y.S.2d at 105.[4]

Although Mr. Newton makes several conclusory assertions that Mr. Meyer was acting in the "course and scope of his actual or apparent authority on behalf of NBCUniversal as its Vice Chairman," he repeatedly admits that his actions were taken in furtherance of Mr. Meyer's own ends, or ends adverse to his employer. *E.g.* ¶ 84 (Mr. Meyer agreed to represent Mr. Newton as his actual or de facto talent agent to obtain financing and distribution of Newton's films), ¶ 34 ("he forwarded Newton's script to members of the Ratner Group . . . using Newton and 'Nicole & O.J.' to keep Jane Doe under control and to keep the Ratner Group's enterprise safe and ongoing"), ¶ 87 (Mr. Meyer allegedly made misrepresentations "to cover up his own abusive relationship with Jane Doe, and as an aider and abettor and/or co-conspirator with members of the Ratner Group"). The law is clear: Mr. Meyer's actions taken in his "personal capacity" and not within the scope of his employment cannot form a basis for Mr. Newton's claims against NBCU. *Bowman*, 781 N.Y.S.2d at 105.

All of Mr. Newton's claims against NBCU must therefore be dismissed, because he has failed to allege facts supporting a respondeat superior theory of liability. The claims also fail as a matter of law for the additional reasons described below.

## II.     Mr. Newton Fails To State a Claim for Breach of Fiduciary Duty (Count 1).

To state a claim for breach of fiduciary duty, a plaintiff must allege (1) the existence of a fiduciary duty, (2) misconduct by the defendant and (3) damage proximately caused by the

---

[4] Courts have found that an employee orchestrating an alleged fraudulent scheme for personal gain, as Mr. Newton alleges against Mr. Meyer, is not within an employee's scope of employment. *See Moore Charitable Found. v. PJT Partners, Inc.*, 115 N.Y.S.3d 11, 13 (N.Y. App. Div. 2019); *Weiss*, 58 N.Y.S.3d at 405 (finding that respondeat superior did not attach where the employee's "actions in introducing the plaintiff into a fraudulent scheme outside the bank were so clearly outside the scope of his employment that his actions were not reasonably foreseeable by [employer]"); *see also Conde Panama LLC*, 2020 WL 2834858, at *3.

misconduct. *See, e.g., Friedman v. Kuczkir*, 272 F. Supp. 3d 613, 635 (S.D.N.Y. 2017). Mr. Newton's claim falters on the very first element, in that the Complaint fails to plead any facts to support a plausible inference that there was a fiduciary relationship between him and NBCU. Indeed, he does not even allege facts to support his contention that *Mr. Meyer* owed him any fiduciary duties (much less that NBCU did).

In New York, "a fiduciary relationship arises when one has reposed trust or confidence in the integrity or fidelity of another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over another." *Staudinger+Franke GMBH v. Casey*, 2015 WL 3561409, at *12 (S.D.N.Y. June 8, 2015). "[A] conventional business relationship does not create a fiduciary relationship in the absence of additional factors." *Id.* Nor do fiduciary duties "arise in the normal course of an arm's-length business transaction." *Clarex Ltd. v. Natixis Securities America LLC*, 2013 WL 2631043, at *5 (S.D.N.Y. June 11, 2013). Accordingly, a plaintiff must allege special circumstances that transformed the business association into a fiduciary relationship. *Legend Autorama, Ltd. v. Audi of Am., Inc.*, 954 N.Y.S.2d 141, 144 (N.Y. App. Div. 2012). Parties to a commercial contract must specifically agree to enter a fiduciary relationship, or one can be found if "one party's superior position or superior access to confidential information is so great as virtually to require the other party to repose trust and confidence in the first party." *Staudinger+Franke.* 2015 WL 3561409, at *12 (quoting *Calvin Klein Trademark Trust v. Wachner*, 123 F. Supp. 2d 731, 733–34 (S.D.N.Y. 2000)). Although "New York courts typically focus on whether one person has reposed trust or confidence in another who thereby gains a resulting superiority or influence over the first," the "[m]ere reposal of one's trust or confidence in a party . . . does not automatically create a fiduciary relationship." *Thermal Imaging, Inc. v. Sandgrain Sec., Inc.*, 158 F. Supp. 2d 335, 343

(S.D.N.Y. 2001). Instead, "the trust or confidence must be accepted . . . ." *Id*.

Here, Mr. Newton attempts to meet this standard by alleging that Mr. Meyer was his "de facto" talent agent, but the facts prove otherwise: Mr. Meyer never entered into a talent agency agreement with him, *see* TAC ¶ 9, and he never purported to be his talent agent. He was not his agent, whether "de facto" or otherwise. Mr. Newton further alleges that Mr. Meyer was an "entertainment industry kingpin," and "super-agent" who "wielded considerable influence over Newton," and that he "put his career and future in the film industry" in Mr. Meyer's hands such that Mr. Meyer "had effective control of Newton's film efforts." TAC ¶¶ 22, 38, 85. But he fails to plead any facts supporting these bald assertions either. Moreover, Mr. Newton ignores that "[a]n essential element of agency is a principal's ability to exercise control over its agent," *Staudinger+Franke*. 2015 WL 3561409, at *12—and that, according to his own allegations, he had no such control over Mr. Meyer. As the *Staudinger* court explained in finding no agency relationship between an artist and its purported talent agent:

> In this case, the plaintiffs [the artists] have offered no evidence to show that they exercised control over MCA or any of the defendants. In fact, in arguing that they put so much trust in the defendants that the plaintiffs were in the defendants' control, they suggest the opposite. Therefore, the "essential element" of an agency relationship, control, is lacking in this case.

2015 WL 3561409, at *12; s*ee also Northern Shipping Funds I, LLC v. Icon Capital Corp*., 921 F. Supp. 2d 94, 103 (S.D.N.Y. 2013) ("[t]he element of control often is deemed the essential characteristic of the principal-agent relationship"); *Kyung Sup Ahn v. Rooney, Pace Inc.,* 624 F. Supp. 368, 370 (S.D.N.Y. 1985) ("The element of subservience is essential, for there can be no agency relationship where the alleged principal holds no right of control over the alleged agent.") Likewise in this case: The entire thrust of Mr. Newton's Complaint is the supposed

power Mr. Meyer had over him, not the other way around.  The "essential element" of an agency relationship—control—is lacking.

Mr. Newton thus cannot state a claim for fiduciary breach.  *See, e.g., Saul v. Cahan*, 61 N.Y.S.3d 265, 268 (N.Y. App. Div. 2017) (complaint failed to adequately plead the existence of a fiduciary relationship where the plaintiff was not under the control of the defendant).  Simply stating a duty exists does not make it so where the underlying facts do not support such a claim. *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 552 (S.D.N.Y. 2006) ("[C]ourts do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened.")  "[A]bsent a special relationship, a claim for breach of fiduciary duty does not lie" in New York.  *Bruckmann, Rosser, Scherrill & Co., L.P. v. Marsh USA Inc.*, 885 N.Y.S.2d 276, 278 (N.Y. App. Div. 2009). Mr. Newton has failed to allege facts that would support the finding of a special relationship between himself and Mr. Meyer, and has failed to allege *any* relationship between himself and NBCU.

### III.    Mr. Newton Fails to State a Claim for Fraudulent Inducement (Count 2).

To state a claim for fraudulent inducement, Mr. Newton must allege that (1) the defendant intentionally made a material misrepresentation of fact, (2) the defendant intended to defraud or mislead the plaintiff, (3) the plaintiff reasonably relied upon the misrepresentation, and (4) the plaintiff suffered damage as a result of such reliance.  *Connaughton v. Chipotle Mexican Grill, Inc.*, 23 N.Y.S.3d 216, 218 (N.Y. App. Div. 2016).  Mr. Newton cannot, as a matter of law, demonstrate any one of these elements.

### A.    Mr. Meyer's Purported Misrepresentations Are Non-Actionable.

Mr. Newton does not allege any misrepresentations or material opinions of fact.  He alleges Mr. Meyer made the following statements regarding "Nicole & O.J.":

- "I always thought [O.J. Simpson] was guilty until I read Josh's script."  TAC ¶ 2.

- "I've come to now know Josh really well and believe in him a hundred percent."
  *Id.*

- "I think Joshua has a vision that's quite brilliant."  *Id.*

- "Let's go sell it."  *Id.*

- "Let's make this movie before this guy gets out of prison."  *Id.*

- "We'll find ways to get this movie financed and distributed."  *Id.*

- "I want my company to see it."  *Id.*

- "Forgive me if I sound more like Brett's agent I'm absolutely not, I'm much more
  on Joshua's side, I know Joshua knows that."  *Id.*

- "Get this presentation film made."  TAC ¶ 3.

- "Make the presentation and let's go sell it."  *Id.*

- "There's no substitute for having a half hour of film or 15 minutes of a film and a
  script."  *Id.*

- "I believe everyone will get their money back once Josh was able to start filming
  this movie."  TAC ¶ 4.

- "The script is wonderful."  TAC ¶ 20.

- "Everyone will want to be in this movie."  *Id.*

- "This film will get made."  *Id.*

- "If anyone wants my opinion on the script have them call me."  *Id.*

- "You're the new Stanley Kubrick."  TAC ¶ 24.

*First*, Mr. Newton's factual allegations are entirely consistent with these alleged

misrepresentations.  For example, Mr. Meyer *did* have the film shown to Jason Blum.  TAC

¶¶ 70–71.  The complaint details multiple efforts made by Mr. Meyer to help Mr. Newton

finance and distribute his film.  And none of those efforts is inconsistent with any of the alleged

misrepresentations.  Mr. Newton fails to allege what about any one of the above

"misrepresentations" is false.

*Second,* the alleged statements by Mr. Meyer are, at most, non-actionable statements of

opinion or puffery.  *See Int'l Fin. Corp. v. Carrera Holdings Inc.*, 920 N.Y.S. 2d 310, 311 (N.Y.

App. Div. 2011) (holding that statements that "amounted to little more than expressions of hope

and opinion, and related to future expectations . . . cannot constitute actionable fraud"); *see also

Sidamonidze v. Kay,* 757 N.Y.S.2d 560, 560 (N.Y. App. Div. 2003) (alleged misrepresentations

were "mere puffery" and opinions that could not support a fraud claim).  Under New York

law, alleged misrepresentations that relate only to future events cannot form the basis of a claim

for misrepresentation—whether intentional, negligent or innocent.  *See, e.g., New York Fruit

Auction Corp. v. City of New York,* 439 N.Y.S.2d 648, 652 (N.Y. App. Div. 1981),

*aff'd*, 439 N.E.2d 356 (N.Y. 1982) (development plan "could not serve as a basis for either

deliberate, negligent or unintentional misrepresentation because it was merely a presentation of

predictions and expectations" and there was no "guaranty of fulfillment").  In *New York Fruit

Auction Corp. v. City of New York, supra,* the intermediate appellate court, rejecting a claim of

negligent misrepresentation based upon the City's failure to implement a development plan for

the area surrounding property it leased to plaintiff, stated the general rule as follows:

> It is the general rule that fraud cannot be predicated upon statements or
> representations which involve mere matters of futurity or things to happen or to be
> done in the future.  A misrepresentation as to a fact not yet in existence, or as to
> something that has not happened or occurred, but which is merely a mis-
> representation as to a future event that may or may not occur, can form no basis of
> actionable fraud, but the false representation, in order to constitute such fraud, must
> relate to some material past or existing fact.  While great expectations often prove
> disappointing, they do not prove fraud . . . .

439 N.Y.S.2d at 652, *quoting* 24 N.Y. Jur., Fraud & Deceit § 43, pp. 77 and 78.  On appeal, the

New York Court of Appeals affirmed the dismissal in that case, holding that plaintiffs'

allegations of purposeful or negligent misrepresentation were inadequate because the "alleged

representations, more precatory than promissory, at best were only unenforceable

misrepresentations of future intent."  439 N.E.2d at 356.

Here, Mr. Newton's fraudulent inducement claim must be dismissed for the same reason.

He alleges that "[Mr.] Meyer, acting in the course and scope of his actual or apparent authority

as Vice Chairman of NBCUniversal, promised . . . 'Nicole & O.J' and 'The Will to Resist'

would be made, using his influence as a reputable super-agent and a powerful studio executive to

arrange financing, production, and distribution of the films."  TAC ¶ 92.  These alleged

misrepresentations were nothing more than Mr. Meyer's hopes and opinions about the future of

Mr. Newton's films.  Opining on the prospects of nascent film projects "entailed the prediction

of a rather unreckonable future phenomenon," which "could neither be foreseen with certainty

nor controlled with precision."  *Burgundy Basin Inn, Ltd. v. Watkins Glen Grand Prix Corp.*, 379

N.Y.S.2d 873, 879-80 (N.Y. App. Div. 1976).  Moreover, the alleged misrepresentations did not

include any assurance that Mr. Meyer's projections would come to fruition, and were plainly

made with "hope rather than a guarantee of fulfillment."  *New York Fruit Auction Corp. v. City

of New York*, 439 N.Y.S.2d at 652.  Mr. Newton thus cannot satisfy the first element of his

fraudulent inducement claim.

### B.     Mr. Newton Fails to Adequately Plead Scienter.

To satisfy the elements of the claim, Mr. Newton must also allege with particularity facts

sufficient to infer that defendants knew that the alleged misstatements were false and that they

possessed "an actual intent to deceive, manipulate, or defraud."  *Zutty v. Rye Select Broad Mkt.*

*Prime Fund, L.P.*, 2011 WL 5962804, at *11 (N.Y. Sup. Ct. Apr. 15, 2011).  A plaintiff must make "specific and detailed factual allegations that the defendant . . . had knowledge of [the] alleged fraud."  *Friedman v. Anderson*, 803 N.Y.S.2d 514, 517 (N.Y. App. Div. 2005).  Here, Mr. Newton alleges that Mr. Meyer "never intended to perform on his promises," and was "only using [his promises] as a ploy to forestall a lawsuit by Jane Doe . . . against [Mr.] Meyer and several other high-profile executives for their sexual exploitation of Jane Doe."  TAC ¶ 94.  But Mr. Newton's assertion that Mr. Meyer, "from the start, harbored an intent to deceive Newton," is conclusory and is not supported by the facts.  *Id.*  Instead, the facts he does allege, such as those pertaining to Mr. Meyer's help in obtaining funding for one of Mr. Newton's films, directly contradict any inference of fraudulent intent.  A plaintiff cannot "base claims of fraud on speculation and conclusory allegations."  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004).  But Mr. Newton does just that:  His allegations that Mr. Meyer made misrepresentations about his intentions to help him with his film in an attempt to "forestall a lawsuit" from a third party, TAC ¶ 94, are based on speculation and are conclusory.  They cannot satisfy the second element of his fraudulent inducement claim.

## C.    Mr. Newton Fails to Adequately Plead Reasonable Reliance.

Third, Mr. Newton fails to allege actual or justifiable reliance on any purported misrepresentations.  Under New York law, to establish the element of reliance:

> Plaintiff must show not only that [it] actually relied on the misrepresentations, but also that such reliance was reasonable.  Where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, [it] cannot claim justifiable reliance on defendant's misrepresentations.

*Stuart Silver Assocs. v. Baco Dev. Corp.*, 665 N.Y.S.2d 415, 417 (N.Y. App. Div. 1997).

Mr. Newton cannot demonstrate reasonable reliance here.  It was unreasonable for him, a self-described experienced, "award-winning" filmmaker, TAC ¶¶ 1, 13, to rely on Mr. Meyer's

vague promises.  *See In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d 512, 537 (S.D.N.Y. 2012) (no reasonable reliance where oral misstatements "contained a high level of generality").  Further, Mr. Newton had the means to evaluate and understand the nature the financing arrangements he agreed to, but apparently failed to do so.

### D. Mr. Newton Fails to Plead Out-Of-Pocket Damages.

Finally, Mr. Newton's fraudulent inducement claim fails because he seeks only damages for speculative lost profits and does not claim that he suffered any actual losses from the alleged misrepresentation.  Under New York law, damages for speculative lost profits are not recoverable.  The "out-of-pocket" rule limits recovery for fraudulent inducement claims to actual losses sustained as the direct result of the wrong alleged.  As stated by the New York Court of Appeals: "'[t]he true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong' or what is known as the 'out-of-pocket' rule."  *Lama Holding Co. v Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996).  "Under this rule, . . . [d]amages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained" and "there can be no recovery of profits which would have been realized in the absence of fraud."  *Id*.  The rule explicitly "bars recovery of profits that would have been realized in the absence of fraud, including the loss of an alternative bargain overlooked in favor of the fraudulent one, as inherently speculative and undeterminable."  *Imaging Int'l v. Hell Graphic Sys., Inc*., 2007 WL 3227245, at *7 (N.Y. Sup. Ct. Oct. 29, 2007).

Here, Mr. Newton fails to allege concrete, out-of-pocket damages.  He claims that, as a result of Mr. Meyer's alleged fraud, he was forced to enter a "much less favorable film deal," TAC ¶ 40, and "forewent other opportunities to get [his] film projects financed, produced, and distributed," *id*. ¶ 95.  These do not constitute actual, "out-of-pocket" losses.  *See MTI/The Image Grp., Inc. v. Fox Studios E., Inc*., 690 N.Y.S.2d 576, 578 (N.Y. App. Div. 1999) (Plaintiff "fails

to demonstrate any actual out-of-pocket pecuniary damages, and merely seeks the $6 million in lost profit it would have gained . . . . Lost profits are not recoverable under a fraud theory.")

Furthermore, "the loss of an alternative contractual bargain . . . cannot serve as a basis for fraud or misrepresentation damages because the loss of the bargain was undeterminable and speculative." *Lama Holding Co.*, 668 N.E.2d at 1374. Here, Mr. Newton's theory of injury based on his forbearance from *offering* his intellectual property to a hypothetical producer other than NBCU, TAC ¶¶ 40, 95, is precisely the type of injury that is precluded under *Lama* and its progeny. Mr. Newton does not allege any other entity to which he might have offered his supposed intellectual property, much less any that wanted to enter into a production agreement with Mr. Newton. Even if he could allege such facts, they would still be insufficient, as Mr. Newton must allege a pecuniary loss because of the alleged fraud, not speculations of what he might have gained in the absence of the alleged fraud. His conclusory allegations that he suffered "economic injuries" and "direct and consequential damages," TAC ¶ 97, are insufficient. On this final element, the cause of action fails as a matter of law.

## IV.  Mr. Newton Fails to State a Claim for Negligent Misrepresentation (Count 3).

A claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart accurate information to the plaintiff; (2) that the information actually imparted was incorrect; and (3) that he reasonably relied on the information and (4) was damaged as a result. *J.A.O. Acquisition Corp. v. Stavitsky,* 863 N.E.2d 585, 587 (N.Y. 2007). Here, Mr. Newton does not identify the existence of a special relationship, address the reasonableness of Mr. Newton's alleged reliance on unspecified "misrepresentations," or explain how he was damaged by his purported reliance. He thus cannot state a claim.

## A.    Mr. Newton Fails to Identify the Existence of a Special Relationship.

Under New York law, "an arm's-length business relationship between sophisticated parties will not give rise to a confidential or fiduciary relationship that would support a cause of action for negligent misrepresentation." *J.P. Morgan Secs. Inc. v. Ader*, 9 N.Y.S.3d 181, 183 (N.Y. App. Div. 2015). New York has a clearly articulated policy of limiting the scope of liability for negligent misrepresentation by narrowly interpreting the special relationship element. In *Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 605 N.E.2d 318 (N.Y. 1992), the Court of Appeals of New York articulated this policy justification:

> This Court has long held that before a party may recover in tort for pecuniary loss sustained as a result of another's negligent misrepresentations there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity. Such a requirement is necessary in order to provide fair and manageable bounds to what otherwise could prove to be limitless liability.

*Id.* at 320. Indeed, where, as here, no privity of contract exists between the parties, the privity-like relationship is established only when each of three criteria are satisfied: (1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance. *Id.* at 321.

*First,* Mr. Newton attempts to show a special or privity-like relationship by referring back to the "fiduciary relationship that [Mr.] Meyer had with [Mr.] Newton." TAC ¶ 100. But there is no such "fiduciary relationship," as explained above.

*Second,* Mr. Newton does not—and cannot—allege the existence of a privity, or privity-like, relationship with Mr. Meyer, much less NBCU. Mr. Newton never entered into a contract with either defendant. Nor does Mr. Newton allege that he did. Instead, he claims that

Mr. Meyer "affirmatively and purposely led Newton to believe that Meyer was providing representation and advice to him as a talent agent." TAC ¶ 9. This is plainly *not* sufficient to establish a privity relationship. Mr. Newton and the defendants thus have no actual privity of contract between them or a relationship close enough to approach privity. Nor has Mr. Newton satisfied any of the three criteria articulated by the Court in *Prudential Ins. Co. of Am.* In particular, Mr. Newton has alleged no conduct on the part of Mr. Meyer or NBCU which evinces their understanding that the plaintiff would exclusively rely on the information provided to the degree of foregoing any other efforts to produce his film projects. Thus, given the fact that Mr. Newton had no relationship whatsoever with NBCU, and his relationship—to the extent one existed—with Mr. Meyer is premised solely on an alleged "de facto" talent agency (although no agreement is alleged), neither defendant had any duty under these circumstances. To impose such an unqualified duty on a movie studio in relation to potential filmmakers would extend a studio's liability to unprecedented and unreasonable proportions, essentially creating the unqualified liability which the Court of Appeals' privity standard is designed to forestall. A finding of a special relationship in this case would open the door to potential liability for negligent misrepresentation any time a Hollywood executive expressed praise for an individual's film, or offered to connect that person with others in the industry.

B. **The Alleged Misrepresentations are Non-Actionable Statements of Opinion or Puffery.**

For the same reasons described in Section III.A, above, the alleged misrepresentations are non-actionable promises as to future performance and statements of opinion or puffery. In response to NBCU's contentions that the alleged misrepresentations are non-actionable promises of future conduct, Mr. Newton alleges that "[t]his was not a matter of [Mr.] Meyer not performing promises as to future performance, but of [Mr.] Meyer's misrepresentations born of

pursuit of his self-interest." TAC ¶ 101. This falls short. An opaque and conclusory statement about unspecified "misrepresentations" does nothing to state a prima facie case for negligent misrepresentation. Mr. Meyer's alleged statements remain non-actionable puffery or opinions as to future expectation. *See Sheth v. New York Life Ins. Co.*, 709 N.Y.S.2d 74, 75 (N.Y. App. Div. 2000) (finding the "purported misrepresentations relied upon by plaintiffs may not form the basis of a claim for fraudulent and/or negligent misrepresentation since they are conclusory and/or constitute mere puffery, opinions of value or future expectations"); *Capricorn Invs. III, L.P. v. Coolbrands Int'l, Inc.*, 886 N.Y.S.2d 158, 159 (N.Y. App. Div. 2009) ("[C]ourt correctly dismissed the claim of negligent misrepresentation because it is predicated upon promises of future conduct, rather than statements as to existing material fact").

### C.     Mr. Newton Fails to Plead Reasonable Reliance.

For the reasons described in section III.C, above, Mr. Newton also fails to sufficiently plead reasonable reliance.  As noted above, all of the alleged "misrepresentations" are nonactionable expressions of opinion, puffery and expectation. No reasonable film producer could have reasonably relied on them in forming a decision not to seek funding or distribution from any other party.

New York law places responsibility on those who claim to have been the victims of fraudulent representations to exercise their experience and intelligence to discern "the real quality of the subject of the representations[.]" *Schlaifer Nance & Co. v. Estate of Andy Warhol,* 119 F.3d 91, 98 (2d Cir. 1997). Failure to do so precludes a plaintiff from claiming that he or she reasonably relied on those representations as a matter of law. *See id.* The degree of responsibility is commensurate with the individual's experience and sophistication. *Id.* Here, the Complaint does not allege that Mr. Newton was a casual or unsophisticated film maker. On the contrary, he alleges that he is an "award-winning" filmmaker with an "award-winning

career." TAC ¶¶ 1, 13, 24. Mr. Newton had the means to evaluate and understand the nature of the financing arrangements he agreed to, but he apparently failed to do so. The Court thus can and should find that Mr. Newton's claimed reliance on the purported representations was unreasonable as a matter of law. *See Schlaifer, supra* (affirming judgment as a matter of law on fraud claims based on absence of reasonable reliance).

### D.     Mr. Newton Fails to Allege Out-Of-Pocket Damages.

For the reasons described in section III.D, above, Mr. Newton's claim for negligent misrepresentation must also be dismissed because he does not—and cannot—allege out-of-pocket damages related to this claim. *See, e.g., Facie Libre Assocs. I, LLC v. SecondMarket Holdings, Inc.*, 961 N.Y.S.2d 44, 45 (N.Y. App. Div. 2013) (dismissing negligent misrepresentation claim "because plaintiffs failed to allege any out-of-pocket loss as a result of the subject transaction, as opposed to lost profits").

Mr. Newton's Complaint does not identify recoverable damages. He alleges that he was damaged when he was "pressured" by third parties to enter a "significantly less favorable" film financing deal, TAC ¶ 40, and that he "forewent other opportunities to get [his] film projects financed, produced, and distributed." *Id.* ¶ 95. Neither allegation is sufficient because, under New York law, "the loss of an alternative contractual bargain . . . cannot serve as a basis for fraud or misrepresentation damages . . . ." *Starr Found. v. Am. Int'l Group, Inc.*, 901 N.Y.S.2d 246, 249 (N.Y. App. Div. 2010); *Lama Holding Co.*, 668 N.E.2d at 1374. Accordingly, Mr. Newton's third cause of action against NBCU must be dismissed.

## V.     Mr. Newton's Claims Against NBCU Should Be Dismissed With Prejudice.

"It is within the sound discretion of the district court to grant or deny leave to amend." *Zahra v. Town of Southold*, 48 F.3d 674, 687 (2d Cir. 1995); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962). Although Rule 15 provides that leave to amend shall be "freely give[n]," it is

well established that dismissal with prejudice is appropriate where a plaintiff has already had "ample opportunity" to seek leave to amend, *D. Penguin Bros. Ltd. v. City Nat. Bank*, 587 F. App'x 663, 669 (2d Cir. 2014), or where further amendment would be "futile," *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 188 (2d Cir. 2011)*; accord Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53–54 (2d Cir. 1999).  Here, both of these grounds support a dismissal with prejudice.

*First,* the Court should not grant leave to amend because Mr. Newton has already amended his Complaint *three times,* including after NBCU wrote to Mr. Newton outlining the arguments made in this motion.  The Court also offered Mr. Newton yet another opportunity to amend his complaint after Mr. Newton was informed of the basis for NBCU's Rule 9(b) motion, an opportunity that Mr. Newton chose to decline.  Although Mr. Newton had not yet had the benefit of NBCU's motion papers, the legal grounds for NBCU's Rule 9(b) argument were not a secret:  they were recited to the Court.  Since Mr. Newton elected not to amend his pleading when given a clear opportunity, he should not now get an additional chance to amend simply because he didn't feel it necessary to do so following the pre-motion letter.

*Second*, any further amendment would be futile, as there are no additional facts that Mr. Newton could allege that would state a claim against NBCU.  As discussed above, since there is no basis by which Mr. Newton can adequately state a claim for fraud against NBCU, and given this Court's findings that talent agent relationships do not constitute fiduciary relationships, there is no instance in which Mr. Newton's Complaint can be cured by amendment.  Nor is there a basis by which Mr. Newton could plead a colorable claim for negligent misrepresentation, given that it is premised on the same, non-existent fiduciary relationship he alleges elsewhere in his Complaint.

**CONCLUSION**

For the foregoing reasons, NBCU respectfully requests that the Court grant NBCU's

Motion to Dismiss all of Mr. Newton's claims against the company with prejudice.


Dated:   July 26, 2022                              Respectfully submitted,

                                                    O'MELVENY & MYERS LLP

                                                    By: _____/s/ Catalina J. Vergara_____
                                                    Daniel Petrocelli (admitted *pro hac vice*)
                                                    1999 Avenue of the Stars, 8th Floor
                                                    Los Angeles, CA 90067
                                                    Office: (310) 553-6700
                                                    Fax: (310) 246-6779
                                                    Email: dpetrocelli@omm.com

                                                    Catalina J. Vergara (admitted *pro hac vice*)
                                                    O'Melveny & Myers LLP
                                                    400 South Hope Street, 18th Floor
                                                    Los Angeles, CA 90071
                                                    Office: (213) 430-7828
                                                    Fax: (213) 430-6407
                                                    Email: cvergara@omm.com


                                                    Anton Metlitsky
                                                    7 Times Square
                                                    New York, New York 10036
                                                    Tel: (212) 326-2000
                                                    Fax: (212) 326-2061
                                                    Email: ametlitsky@omm.com

                                                    *Counsel for NBC Universal Media, LLC*