## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JOSHUA NEWTON,

        *Plaintiff,*

    *v.*

RONALD MEYER and NBC
UNIVERSAL MEDIA LLC

       *Defendants.*

Case No. 1:22-cv-00540-AT

## DEFENDANT RONALD MEYER'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

PERRY GUHA LLP
E. Danya Perry
Samidh Guha
Alexander K. Parachini
1740 Broadway, 15th Floor
New York, NY 10019
Telephone: (212) 399-8330

*Attorneys for Defendant Ronald Meyer*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................... 1

PLAINTIFF'S ALLEGATIONS AND CLAIMS .......................................................... 4

LEGAL STANDARDS FOR A MOTION TO DISMISS............................................. 7

ARGUMENT ................................................................................................................ 8

I.   The TAC Should Be Dismissed for Failure to State a Claim ............................. 8

    A.   Plaintiff's Claim for Breach of Fiduciary Duty Should Be Dismissed.................. 9

    B.   Plaintiff's Claim for Fraudulent Inducement Should Be Dismissed .................... 12

        1.   Plaintiff Fails to Allege Any Misrepresentations of Fact ......................... 13

        2.   Plaintiff Fails to Allege Justifiable Reliance ............................................ 15

        3.   Plaintiff Fails to Adequately Allege Damages.......................................... 16

    C.   Plaintiff's Claim for Negligent Misrepresentation Should Be Dismissed........... 17

        1.   Plaintiff Fails to Allege the Existence of a Special Relationship ............. 17

        2.   Plaintiff Fails to Allege Any False or Incorrect Statements ..................... 18

        3.   Plaintiff Fails to Adequately Allege Damages.......................................... 18

II.  The TAC Should Be Dismissed for Lack of Personal Jurisdiction ................................. 19

    A.   The New York Long-Arm Statute Does Not Permit Personal Jurisdiction ......... 19

        1.   Plaintiff's Causes of Action Do Not Arise Out of Mr. Meyer's
            Transaction of Business in New York ...................................................... 21

        2.   Plaintiff Fails to Allege that Mr. Meyer Committed a Tortious Act
            Within New York.................................................................................... 22

        3.   Plaintiff Fails to Allege that Mr. Meyer Caused Injury in New York ...... 23

    B.   Jurisdiction Would Not Be Permissible Under the Due Process Clause ............. 24

CONCLUSION............................................................................................................ 26

# TABLE OF AUTHORITIES

**Cases**

*AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC,*
  254 F. Supp. 2d 373 (S.D.N.Y. 2003)................................................................8, 17

*Am. Int'l Grp., Inc. v. Greenberg,*
  23 Misc.3d 278 (Sup. Ct. N.Y. County 2008) ........................................................10

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).................................................................................................7

*AVRA Surgical Robotics, Inc. v. Gombert,*
  41 F. Supp. 3d 350 (S.D.N.Y. 2014)......................................................................24

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
  171 F.3d 779 (2d Cir. 1999)..............................................................................21, 22

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
  305 F.3d 120 (2d Cir. 2002)........................................................................20, 24, 25

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007).................................................................................................7

*Bensusan Rest. Corp. v. King,*
  126 F.3d 25 (2d Cir. 1997)................................................................................22, 24

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.,*
  137 S. Ct. 1773 (2017)...........................................................................................21

*Capital Records, L.L.C. v. SeeqPod, Inc.,*
  2010 WL 481228 (S.D.N.Y. Feb. 1, 2010).............................................................22

*Chloe v. Queen Bee of Beverly Hills, LLC,*
  616 F.3d 158 (2d Cir. 2010)...................................................................................19

*Damiler AG v. Bauman,*
  571 U.S. 117 (2014)...............................................................................................19

*DiBartolo v. Abbott Labs.,*
  914 F. Supp. 2d 601 (S.D.N.Y. 2012)....................................................................17

*EBC I, Inc. v. Goldman, Sachs & Co.,*
  5 N.Y.3d 11 (2005) .............................................................................................9, 10

*Elghanian v. Harvey,*
  249 A.D.2d 206 (1st Dep't 1998) ...........................................................................13

*Facie Libre Assocs. I, LLC v. SecondMarket Holdings, Inc.*,
106 A.D.3d 565 (1st Dep't 2013) ........................................................................19

*Faith Assembly v. Titledge of N.Y. Abstract, LLC*,
106 A.D.3d 47 (2d Dep't 2013) .......................................................................9, 11

*Fung-Schwartz v. Cerner Corp.*,
2018 WL 4386087 (S.D.N.Y. Sept. 13. 2018)....................................................15

*George Reiner & Co. v. Schwartz*,
41 N.Y.2d 648 (1977) .........................................................................................21

*Goldfarb v. Schwartz*,
26 A.D.3d 462 (2d Dep't 2006) ..........................................................................18

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
227 F.3d 8 (2d Cir. 2000).....................................................................................18

*IDC Capital, LLC v. CodeSmart Holdings, Inc.*,
2020 WL 815733 (S.D.N.Y. Feb. 19, 2020) ......................................................18

*IMAX Corp. v. The Essel Grp.*,
154 A.D.3d 464 (1st Dep't 2017) ........................................................................19

*Int'l Fin. Corp. v. Carrera Holdings Inc.*,
82 A.D.3d 641 (1st Dep't 2011) ..........................................................................13

*J.P. Morgan Secs. Inc. v. Ader*,
127 A.D.3d 506 (1st Dep't 2015) ........................................................................17

*JAO Acquisition Corp. v. Stavitsky*,
8 N.Y.3d 144 (2007) ...........................................................................................17

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
2017 WL 825482 (S.D.N.Y. Mar. 2, 2017) ........................................................22

*Karsanow v. Kuehlewein*,
232 A.D.2d 458 (2d Dep't 1996) .........................................................................13

*Kearney v. Salomon Smith Barney, Inc.*,
137 P.3d 914 (Cal. 2006) ......................................................................................6

*Kelly v. MD Buyline, Inc.*,
2 F. Supp. 2d 420 (S.D.N.Y. 1998) .....................................................................23

*Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd.*,
392 F. Supp. 3d 382 (S.D.N.Y. 2019)..................................................................17

iii

*Kramer v. Vogl,*
  17 N.Y.2d 27 (1966) .........................................................................................22

*Krys v. Pigott,*
  749 F.3d 117 (2d Cir. 2014)........................................................................8, 9, 10

*Lama Holding Co. v. Smith Barney,*
  88 N.Y.2d 413 (1996) ..........................................................................13, 16, 19

*LaMarca v. Pak-Mor Mfg. Co.,*
  95 N.Y.2d 210 (N.Y. 2000) .........................................................................19, 20

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
  673 F.3d 50 (2d Cir. 2012)....................................................................................8

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
  732 F.3d 161 (2d Cir. 2013)..................................................................................24

*Martin Hilti Family Trust v. Knoedler Gallery, LLC,*
  137 F. Supp. 3d 430 (S.D.N.Y. 2015).....................................................................8

*Northeast General Corp. v. Wellington Advertising, Inc.,*
  82 N.Y.2d 158 (1993) ...........................................................................................10

*Passigila v. Northwell Health, Inc.,*
  252 F. Supp. 3d 129 (E.D.N.Y. 2017) ...................................................................17

*Penguin Grp. (USA) Inc. v. Am. Buddha,*
  609 F.3d 30 (2d Cir. 2010)......................................................................................8

*Perella Weinberg Partners LLC v. Kramer,*
  153 A.D.3d 443 (1st Dep't 2017) ..........................................................................14

*Planck LLC v. Particle Media, Inc.,*
  2021 WL 5113045 (S.D.N.Y. Nov. 3, 2021)....................................................8, 13

*Reich v. Lopez,*
  858 F.3d 55 (2d Cir. 2017).....................................................................................19

*Rut v. Young Adult Institute, Inc.,*
  74 A.D.3d 776 (2d Dep't 2010) ...............................................................................9

*Schlaifer Nance & Co. v. Estate of Warhol,*
  119 F.3d 91 (2d Cir.1997).......................................................................................15

*Societe Nationale D'Exploitation Industrielle Des Tabacs Et Allumettes v.*
  *Salomon Bros. Int'l Ltd.,*
  251 A.D.2d 137 (1st Dep't 1998) ...........................................................................11

*Sotheby's, Inc. v. Minor*,
    2009 WL 3444887 (S.D.N.Y. Oct. 26, 2009) .................................................5, 9

*Spiegel v. Schulmann*,
    604 F.3d 72 (2d Cir. 2010) .................................................................................21

*Spirit Partners, L.P. v. Audiohighway.com*,
    2000 WL 1593385 (S.D.N.Y. Oct. 25, 2000) ....................................................15

*Thomas v. Ashcroft*,
    470 F.3d 491 (2d Cir. 2006) .................................................................................8

*Troma Entm't, Inc. v. Centennial Pictures Inc.*,
    729 F.3d 215 (2d Cir. 2013) .................................................................................8

*V Cars, LLC v. Israel Corp.*,
    902 F. Supp. 2d 349 (S.D.N.Y. 2012) ................................................................23

*Walden v. Fiore*,
    571 U.S. 277 (2014) ...........................................................................................21

**Rules & Statutes**

Cal. Penal Code § 632 ...............................................................................................6

NY CPLR § 302(a)(1) ...............................................................................19, 20, 21, 22

NY CPLR § 302(a)(2) ...............................................................................20, 22, 23

NY CPLR § 302(a)(3) ...............................................................................20, 23, 24

NY CPLR § 302(a)(4) ...............................................................................................20

Fed. R. Civ. P. 9(b) ............................................................................................*passim*

Fed. R. Civ. P.12(b)(1) ......................................................................................*passim*

Fed. R. Civ. P. 12(b)(2) .....................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) .....................................................................................*passim*

Defendant Ronald Meyer respectfully submits this memorandum of law in support of his motion to dismiss Plaintiff Joshua Newton's ("Plaintiff" or "Newton") Third Amended Complaint [ECF No. 36] (the "TAC") for failure to state a claim and lack of personal jurisdiction pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Courts, like the cinematic world to which Plaintiff aspires, often provide the backdrop for compelling narratives and complex issues. Plaintiff's TAC presents neither and must be dismissed. Plaintiff presents in his TAC a tale about Mr. Meyer that fails to state a legal claim and offers no basis for jurisdiction in this Court. Plaintiff by his own telling (and indeed, retelling in this, his third attempt) concedes key facts and omits other necessary facts that require dismissal of his claims as a matter of law.

Stripped of its tabloid-style bluster, the TAC presents legally invalid claims against Mr. Meyer. Plaintiff (an experienced British filmmaker) claims to believe that Mr. Meyer (then the Vice Chairman of NBC Universal Media, LLC ("NBCU")) was moonlighting as Plaintiff's personal talent agent. Plaintiff spins from this claim to accuse Mr. Meyer of breaching fiduciary duties purportedly owed to the filmmaker by virtue of this informal, never-memorialized, chimerical relationship. In doing so, Plaintiff admits, as he must, that he never entered into any written agreement with Mr. Meyer that would create any duties or obligations running from Mr. Meyer to Plaintiff as his ostensible "agent. "And Plaintiff further concedes—again as he must— that Mr. Meyer at all times relevant to the TAC worked for NBCU. This latter concession confirms the reality that, at all times relevant to the TAC, Mr. Meyer owed fiduciary duties to NBCU and not to Plaintiff.

Boxed in by these necessary admissions, Plaintiff instead claims in conclusory fashion that Mr. Meyer made numerous representations and informal commitments on behalf of NBCU, about the financing, casting, production, filming, and distribution of two of Plaintiff's film projects. Plaintiff further contends that Mr. Meyer knew these promises to be false and that he or NBCU would never honor them. Plaintiff claims that this elaborate scheme was all intended to facilitate and cover up Mr. Meyer's allegedly inappropriate relationship with Jane Doe, an actress set to star in one of Plaintiff's films, as well as Jane Doe's allegedly inappropriate relationships with several other Hollywood power players. Plaintiff argues that but for Mr. Meyer's purported conduct, Plaintiff would have enjoyed great fame, fortune, and success.

Plaintiff's claims for breach of fiduciary duty, fraudulent inducement, and negligent misrepresentation against Mr. Meyer and NBCU, based on his allegations taken as true, must be dismissed.

First, Plaintiff's breach of fiduciary duty claim fails on a threshold level because the allegations in the TAC simply do not establish the existence of a fiduciary relationship. Quite to the contrary, Plaintiff admits and acknowledges that Mr. Meyer was at all relevant times employed by NBCU and that he never signed any agreement with Mr. Meyer. He further concedes that his goal was to do business with NBCU and that he engaged in discussions with Mr. Meyer as an NBCU representative to achieve that ambition.

Second, Plaintiff's fraudulent inducement claim fails because Plaintiff does not allege any actionable statements of fact that would form the basis for his alleged fraudulent inducement. The only specific "representations" and "promises" attributed to Mr. Meyer that are alleged with the requisite legal particularity are a collection of non-actionable predictions, opinions, and statements of future intention.

<u>Third</u>, and derivative of the failings of his first two counts, Plaintiff's negligent misrepresentation claims fails because he does not identify any special or confidential relationship with Mr. Meyer and he does not allege any actionable false statements of fact.

In addition, Plaintiff's fraudulent inducement and negligent misrepresentations claims fail because he does not allege any damages that are recoverable on a theory of fraud. Instead of concrete, out-of-pocket economic injuries, Plaintiff alleges only inherently speculative claims of lost profits and opportunities, emotional harm, and damage to his reputation and career prospects.

Independent of the absence of substantive legal merit to Plaintiff's claims, the allegations in the TAC fail to establish that this Court has personal jurisdiction over Mr. Meyer. Neither Plaintiff nor Mr. Meyer are residents of New York. Indeed, Plaintiff is a citizen and resident of the United Kingdom. The TAC contains only one specific allegation of conduct by Mr. Meyer in New York that by Plaintiff's own telling is unrelated to any of Plaintiff's causes of action against Mr. Meyer. Plaintiff does not allege that Mr. Meyer agreed to act as his agent while in New York, not does he allege with the requisite specificity that Mr. Meyer made any allegedly fraudulent statements while in New York, or that Mr. Meyer committed any other act related to Plaintiff's causes of action while in New York. Furthermore, Plaintiff fails to even allege that Plaintiff was ever located in New York during any of the relevant events, or that Plaintiff suffered any damages in New York. Accordingly, Plaintiff's causes of action in the TAC do not "arise out of" or "relate to" Plaintiff's New York conduct as required by the New York long-arm statute and the Due Process Clause.

Plaintiff has spun a yarn that is simply not legally cognizable against Mr. Meyer (or NBCU). Consistent with the Court's individual rules, Defendants have twice identified for Plaintiff the legal deficiencies of his claims and twice now Plaintiff has sought to tinker with his story at

the margins to escape dismissal. Yet he has again failed, and enough is enough. At this juncture, each of Plaintiff's claims against Mr. Meyer should be dismissed with prejudice.

## **PLAINTIFF'S ALLEGATIONS AND CLAIMS**

The allegations in the TAC pertinent to Plaintiff's causes of action against Mr. Meyer are summarized as follows and taken to be true for the purposes of this motion only:

Plaintiff is "an award-winning filmmaker." TAC ¶ 1. He is a citizen and resident of the United Kingdom. *Id.* ¶ 13, 16. In December 2016, Mr. Meyer, then the Vice Chairman of NBCU, was sent Plaintiff's script for "The Will to Resist." *Id.* ¶ 20. Mr. Meyer praised the script and "offered [Plaintiff] his advice and assistance in getting the project financed, made, and distributed." *Id.* Mr. Meyer subsequently invited Plaintiff to his office at "Universal Studios." *Id.* ¶ 21. Plaintiff does not state in the TAC where "Universal Studios" is located, but Mr. Meyer's office at the time was located at the former Universal Pictures production studio in California, and there is no obvious "Universal Studios" office located in New York.[1] During the meeting, Mr. Meyer "repeated his praise" for the script and "offered his help to get it produced." *Id.* Mr. Meyer also showed interest in another of Plaintiff's film projects, "Nicole & O.J.," and offered to read the script. *Id.* During this meeting, Mr. Meyer "invited Newton to contact him directly at any time for his help and advice on any of his projects." *Id.* Based on this meeting and unspecified "subsequent telephone conversations with [Mr.] Meyer and actions by [Mr.] Meyer," Plaintiff claims that he "believed [Mr.] Meyer was offering to act as Newton's talent agent." *Id.* ¶ 22. Plaintiff concedes that he never entered into any written agreement with Mr. Meyer by which Mr.

---

[1] Although Mr. Meyer did travel to New York for meetings in connection with his role as Vice Chairman of NBCU, he did not have a dedicated office in New York. To the extent he used office space while in New York, it was at the offices of NBCU, not "Universal Studios."

Meyer agreed to serve as Plaintiff's agent or otherwise assumed any fiduciary obligations to Plaintiff. *Id.* ¶ 9.

Plaintiff alleges that Mr. Meyer had an undisclosed conflict of interest that arose from Mr. Meyer's relationship with actress Jane Doe, who was set to star in "Nicole & O.J." *Id.* ¶ 10. Plaintiff further contends that Mr. Meyer's alleged interest in "manipulating" Jane Doe and covering up their relationship led him to breach the fiduciary duties that Plaintiff claims Mr. Meyer owed to Plaintiff by virtue of their relationship.[2] *Id.* In addition, Plaintiff alleges that Mr. Meyer was conflicted and allegedly breached his purported fiduciary duties as a result of his efforts to "cover[] up" and "facilitate[e]" Jane Doe's relationships with a group of other "titans of the film industry"—which Plaintiff refers to as the "Ratner Group." *Id.*[3]

As part of this alleged "cover up," Plaintiff claims that in August 2017, he was "coerced by members of the Ratner Group and their counsel" into participating in a mediation of Jane Doe's claims against the Ratner Group, and forced "[u]nder threat of violence" to accept a "much less favorable film deal" for "Nicole & O.J."—in which Jane Doe was set to star—as part of a settlement of Jane Doe's claims. *Id.* ¶ 40. Plaintiff alleges that Mr. Meyer knew about this scheme in advance, "but violated his fiduciary duty owed to Newton by concealing the scheme from Newton." *Id.*

Plaintiff further alleges that, in the course of acting as Plaintiff's agent, Mr. Meyer made numerous statements—purportedly quoted verbatim in the TAC—that Plaintiff contends were

---

[2] Plaintiff's contentions that a fiduciary relationship existed and Mr. Meyer breached any fiduciary duties are legal conclusions and thus are not entitled to the presumption of truth for purposes of this motion. *See, e.g.*, *Sotheby's, Inc. v. Minor*, 2009 WL 3444887, at *9 (S.D.N.Y. Oct. 26, 2009) ("the Court is not required to credit mere legal conclusions that are dressed up as factual allegations that a defendant was in a fiduciary relationship with a plaintiff.") (quotation omitted).

[3] It appears based on media reports that Plaintiff has also been romantically involved with Jane Doe, a fact he elides in the TAC.

false promises and representations regarding the production and financing of Plaintiff's film projects. To cite just a few examples, Plaintiff alleges that Mr. Meyer stated:

- "We'll find ways to get this movie financed and distributed" and "I want my company to see it." TAC ¶ 2.[4]

- "There's no substitute for having a half hour of film or 15 minutes of a film and a script." *Id.* ¶ 3.

- "I believe everyone will get their money back once Josh was [*sic*] able to start filming this movie." *Id.* ¶ 4.

- "[E]veryone will want to be in this movie" and "this film will get made." *Id.* ¶ 20.

Elsewhere, Plaintiff alleges, without more, that Mr. Meyer made "express promises to get both films financed, made, and distributed globally," and "expert predictions that both films would achieve great critical commercial success." *Id.* ¶ 23.

Plaintiff alleges that, in reliance on Mr. Meyer's promises and representations, and Plaintiff's belief that Mr. Meyer was acting as his agent, Plaintiff "enter[ed] into a highly flawed and risk-laden agreement for 'Nicole & O.J.' with the members of the Ratner Group," which did not provide for full financing of Plaintiff's film project. *Id.* ¶ 11. Plaintiff further alleges that, in reliance on Mr. Meyer's advice, he passed on opportunities to finance and make "The Will to Resist." *Id.* ¶¶ 59, 95. In addition, Plaintiff alleges that after Jane Doe's relationships with Mr. Meyer and the members of the Ratner Group were reported on in the press, his association with them became an impediment to getting his films financed and made. *Id.* ¶¶ 70-73, 75. Plaintiff

---

[4] These statements and several others are alleged to have been made during what Plaintiff refers to as a "lawfully recorded phone conversation" that occurred on September 4, 2017. *See* TAC ¶ 2. It is by no means clear from the allegations in the TAC that this phone call was "lawfully recorded," given the clear provisions of Cal. Penal Code § 632 requiring the prior consent of all parties before recording a phone call. Plaintiff avoids any mention of where the parties were located when the conversation occurred, and nowhere alleges that Mr. Meyer—a California resident— was located outside of California at the time. *See Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 930 (Cal. 2006) (holding that section 632 applies to calls where at least one party is located in California).

claims that as a result of all of these events, his "once very promising" film projects remain unfinished and his reputation in the film industry is damaged. *Id.* ¶ 82.

Based on these allegations, Plaintiff purports to assert three putative causes of action against Mr. Meyer and NBCU: breach of fiduciary duty (First Cause of Action), fraudulent inducement (Second Cause of Action), and negligent misrepresentation (Third Cause of Action). For each, Plaintiff seeks damages consisting of "emotional distress, damages to reputation, loss of career opportunities, economic injuries, and other direct and consequential damages." *Id.* ¶¶ 89, 97, 102.

## **LEGAL STANDARDS FOR A MOTION TO DISMISS**[5]

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[L]egal conclusions," "threadbare recitals of the elements of a cause of action," and "conclusory statements, do not suffice." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, unless a plaintiff's well pleaded allegations have "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In addition, for claims involving fraud, the plaintiff must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Particularity requires the plaintiff to (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."

---

[5] The legal elements of each of Plaintiff's purported causes of action are set forth in the respective sections of Mr. Meyer's argument below as to each.

*Martin Hilti Family Trust v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 482 (S.D.N.Y. 2015). Each of Plaintiff's claims is subject to the heightened pleading standard of Rule 9(b). *See, e.g.*, *Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2014) (breach of fiduciary duty); *Planck LLC v. Particle Media, Inc.*, 2021 WL 5113045, at *5 (S.D.N.Y. Nov. 3, 2021) (fraudulent inducement); *AIG Global Sec. Lending Corp. v. Banc of Am. Sec. LLC*, 254 F. Supp. 2d 373, 389 (S.D.N.Y. 2003) (negligent misrepresentation).

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (quotation omitted). The Court should not "draw argumentative inferences in the plaintiff's favor," nor "accept as true a legal conclusion couched as a factual allegation." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quotations omitted).

## ARGUMENT

### I.  The TAC Should Be Dismissed for Failure to State a Claim

Each of Plaintiff's three purported causes of action against Mr. Meyer are legally insufficient and must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because Plaintiff has already had an opportunity to amend his complaint in response to Mr. Meyer's first pre-motion letter,[6] dismissal should be with prejudice.

---

[6] *See* ECF Doc. Nos. 30, 31, 37, 38.

### A. Plaintiff's Claim for Breach of Fiduciary Duty Should Be Dismissed

"The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Rut v. Young Adult Institute, Inc.*, 74 A.D.3d 776, 777 (2d Dep't 2010).[7] "A fiduciary relationship exists between two persons when one of them is under a duty to act for or give advice for the benefit of another upon matters within the scope of the relation." *Faith Assembly v. Titledge of N.Y. Abstract, LLC*, 106 A.D.3d 47, 62 (2d Dep't 2013) (quotation omitted). The essence of such a relationship is "a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions." *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19 (2005). "[T]he Court is not required to credit mere legal conclusions that are dressed up as factual allegations that a defendant was in a fiduciary relationship with a plaintiff." *Sotheby's, Inc. v. Minor*, 2009 WL 3444887, at *9 (S.D.N.Y. Oct. 26, 2009) (quotation omitted). To the extent that Plaintiff's claim is premised on alleged misrepresentations, it is subject to the heightened pleading standard of Rule 9(b). *Krys*, 749 F.3d at 129.

Plaintiff's purported claim is that Mr. Meyer agreed to act as Plaintiff's *de facto* talent agent.[8] But his claim fails on a fundamental level because the allegations in the TAC do not support the existence of a fiduciary relationship between Mr. Meyer and Plaintiff. First and foremost,

---

[7] Plaintiff claims in the TAC that he is asserting his claims "under the law of New York." *See* TAC ¶¶ 84, 95, 100. But he does not explain his contention as to why the application of New York law might be appropriate, and it is by no means evident from the allegations in the TAC. Plaintiff does not allege that (i) he is a citizen or resident of New York, (ii) that he was located in New York during any of the events alleged in the TAC, or (iii) that he suffered damages in New York. Furthermore, as noted above, Plaintiff does not allege that Mr. Meyer made any allegedly fraudulent statements while located in New York. Mr. Meyer will assume, solely for purposes of this motion, that New York law applies to Plaintiff's claims.

[8] Although Plaintiff's allegations must be presumed true for purposes of this motion, his assertion that the Vice Chairman of NBCU, who had not worked as a talent agent for more than two decades, would agree to moonlight as Plaintiff's agent, is wildly implausible on its face.

Plaintiff acknowledges, as he must, that he never entered into any written agreement with Mr. Meyer. TAC ¶ 9. But neither does he allege circumstances that could otherwise plausibly give rise to a legally cognizable fiduciary relationship. *See Am. Int'l Grp., Inc. v. Greenberg*, 23 Misc.3d 278, 289 (Sup. Ct. N.Y. County 2008) ("In the absence of a formal fiduciary relationship, a plaintiff must allege special circumstances or other peculiar facts that effectively transformed the parties' relationship into a fiduciary one."). Indeed, Plaintiff acknowledges that Mr. Meyer was the Vice Chairman of NBCU, and specifically alleges that "[a]t all times Newton's goal was to do business with [NBCU]." TAC ¶ 8. This is precisely the sort of ordinary, arms' length commercial relationship that, as a matter of law, does not give rise to fiduciary duties. *See, e.g.*, *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19 (2005).

In this regard, *Northeast General Corp. v. Wellington Advertising, Inc.* is instructive. 82 N.Y.2d 158 (1993). The plaintiff in that case claimed that a fiduciary relationship had been established in the context of a commercial relationship. *Id.* at 160. The New York Court of Appeals found that no principal-agent relationship existed for several reasons: the alleged agent "had no explicit or implied power to bind" the alleged principal; the alleged agent "did not have the power to negotiate" on behalf of the alleged principal; and the alleged agent "had no power to affect any legal relations of" the alleged principal. *Id.* at 164. Because the alleged agent "did not have the power to do anything except find and introduce prospects," the Court of Appeals ruled no fiduciary relationship had been created. *Id.*

Likewise, Plaintiff nowhere alleges with any degree of particularity that Mr. Meyer agreed to a relationship in which he would have any of the type of powers consistent with a fiduciary relationship. And as in *Northeast General*, Mr. Meyer is not alleged to have the power to bind

Plaintiff or negotiate on Plaintiff's behalf, and at most offered to "find and introduce prospects." *See, e.g.*, TAC ¶¶ 30, 35.

Nevertheless, Plaintiff alleges that during a purportedly "lawfully recorded phone conversation" that occurred on September 4, 2017, Mr. Meyer "affirmatively and purposefully led Newton to believe that Meyer was providing representation and advice to him as a talent agent." *Id.* ¶ 2, 9. But Plaintiff's own recounting of the conversation—complete with purported direct quotations from Mr. Meyer—belies his assertion. Nothing Mr. Meyer is alleged to have said during that conversation constitutes an offer or agreement to act as Plaintiff's agent, or an "affirmative[]" representation that Mr. Meyer was acting as Plaintiff's agent.

Plaintiff's other allegations concerning his purported relationship with Mr. Meyer lack the requisite specificity to survive dismissal. For example, he alleges that Mr. Meyer "presented himself" as acting as Plaintiff's talent agent, *id.* ¶ 8, and "offer[ed]" to act as Plaintiff's talent agent, *id.* ¶ 22, but does not allege any facts explaining how Mr. Meyer allegedly did so. This deficiency is fatal to Plaintiff's claim and warrants its dismissal. *See Faith Assembly*, 106 A.D.3d at 62 (dismissing for failure to allege particular facts supporting the existence of a fiduciary relationship). Plaintiff also alleges that Mr. Meyer "had effective control of Newton's film efforts," TAC ¶ 22, but fails to allege any facts showing or even suggesting that Mr. Meyer agreed to or intended to exercise such control. This deficiency too is fatal, because under settled law, Plaintiff's "subjective claims of reliance on [Mr. Meyer's] expertise" are insufficient to establish a fiduciary relationship. *Societe Nationale D'Exploitation Industrielle Des Tabacs Et Allumettes v. Salomon Bros. Int'l Ltd.*, 251 A.D.2d 137, 138 (1st Dep't 1998).

Furthermore, Plaintiff's allegations concerning his purported fiduciary relationship with Mr. Meyer are internally inconsistent and collapse under even the slightest scrutiny. For example,

Plaintiff alleges that Mr. Meyer was both acting in the scope of his employment with NBCU and at the same time acting as Plaintiff's personal talent agent.[9] But NBCU is not a talent agency, and, as Plaintiff acknowledges, Mr. Meyer was not employed as a talent agent.

As another example of Plaintiff's illogic, Plaintiff alleges that on August 9, 2017, he was coerced into participating in a mediation involving Jane Doe, the Ratner Group, and Mr. Meyer, during which he was forced to sign a settlement agreement "[u]nder threat of violence," and expressly alleges that Mr. Meyer "violated his fiduciary duty" in connection with the mediation. TAC ¶ 40. However, Plaintiff elsewhere in the TAC cites to a September 4, 2017, telephone conversation as creating a fiduciary relationship with Mr. Meyer. *See, e.g.*, *id.* ¶ 9 ("as illustrated above in the phone conversation of September 4, 2017, . . . [Mr. Meyer] affirmatively and purposefully led Newton to believe that Meyer was providing representation and advice to him as a talent agent"). It is impossible to reconcile Plaintiff's claim that on August 9, 2017, Mr. Meyer and others threatened him with violence and overbore his will in an adversarial manner, yet on September 4, 2017, Plaintiff believed that Mr. Meyer was acting as his fiduciary.

For all of these reasons, the allegations in the TAC fail to support the plausible existence of a fiduciary relationship between Plaintiff and Mr. Meyer. Accordingly, Plaintiff's claim for breach of fiduciary duty should be dismissed.

## B. Plaintiff's Claim for Fraudulent Inducement Should Be Dismissed

The elements of a claim for fraudulent inducement are "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the

---

[9] Indeed, Plaintiff's purported claims against NBCU are premised on the theory that Mr. Meyer was acting on behalf of NBCU and in the scope of his role as Vice Chairman of NBCU. *See* TAC ¶¶ 8, 84, 92, 100. The internally contradictory nature of these claims against the co-defendants lays bare the claims' legal infirmity.

misrepresentation or material omission, and injury." *Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 421 (1996). Fraudulent inducement claims are also subject to the heightened pleading requirement of Rule 9(b). *Planck LLC*, 2021 WL 5113045, at *5. Plaintiff fails to adequately allege several of the elements of his purported claim and fails entirely to satisfy the strictures of Rule 9(b).

### 1. Plaintiff Fails to Allege Any Misrepresentations of Fact

Under settled law, a claim for fraudulent inducement requires a misrepresentation of fact. Predictions, opinions, and statements of future intention cannot form the basis for such a claim. *See, e.g.*, *Int'l Fin. Corp. v. Carrera Holdings Inc.*, 82 A.D.3d 641, 641-42 (1st Dep't 2011) ("the purportedly fraudulent statements amounted to little more than expressions of hope and opinion, and related to future expectations, and hence cannot constitute actionable fraud"); *Elghanian v. Harvey*, 249 A.D.2d 206, 206 (1st Dep't 1998) ("We agree with the motion court's characterization of the statements complained of as amounting to essentially little more than mere puffery, opinions of value or future expectations that do not constitute actionable fraud."); *Karsanow v. Kuehlewein*, 232 A.D.2d 458, 458 (2d Dep't 1996) (holding that statement that "with myself in the picture your client will get paid" was a non-actionable statement of future intention). But that is all Plaintiff has alleged in the TAC. *See, e.g.*, TAC ¶¶ 2 ("We'll find ways to get this movie financed and distributed"); 3 ("There's no substitute for having a half hour of film or 15 minutes of a film and a script"); 4 ("I believe everyone will get their money back once Josh was [sic] able to start filming this movie"); 20 ("everyone will want to be in this movie," "this film will get made"). None of these purported direct quotations is a statement of fact as opposed to an aspirational statement or expression of opinion.

Plaintiff contends that Mr. Meyer promised to "finance, produce, and distribute the films." *Id.* ¶ 93. But none of the purported direct quotations in the TAC constitutes such a promise. *See,*

*e.g.*, *id.* ¶¶ 2 ("We'll find ways to get this movie financed and distributed"); 3 ("There's no substitute for having a half hour of film or 15 minutes of a film and a script"); 4 ("I believe everyone will get their money back once Josh was [sic] able to start filming this movie"); 20 ("everyone will want to be in this movie," "this film will get made"). The only allegations that Mr. Meyer ever made such an explicit, factual promise are vague, conclusory, and fail to set forth the content of the allegedly fraudulent statements with any particularity whatsoever, let alone the particularity required by Rule 9(b). *See, e.g.*, *id.* ¶¶ 20 ("Meyer offered Newton his advice and assistance in getting the project financed, made, and distributed"), 23 (referring to "Meyer's express promises to get both films financed, made, and distributed globally, and about his expert predictions that both films would achieve great critical commercial success"). Moreover, other allegations in the TAC directly contradict any inference of fraudulent intent. For example, Plaintiff alleges that Mr. Meyer "advised Newton to publicize 'Nicole & O.J.' at the Cannes Film Festival and offered to recommend the project to the now late Paul Bloch, then Chairman of industry-renowned publicists, Rogers & Cowan," which resulted in positive press coverage of the film project. *Id.* ¶ 53. For all of these reasons, Plaintiff has failed to allege an actionable misrepresentation, and his claim for fraudulent inducement should be dismissed.

Plaintiff's sweeping allegation that Mr. Meyer "from the start, harbored an intent to deceive Newton," *id.* ¶ 94, cannot save his claim. The First Department has held that "[g]eneral allegations of lack of intent to perform are insufficient; rather, *facts* must be alleged establishing that the adverse party, at the time of making the promissory representation, never intended to honor the promise." *Perella Weinberg Partners LLC v. Kramer*, 153 A.D.3d 443, 449 (1st Dep't 2017) (emphasis added); *see also Fung-Schwartz v. Cerner Corp.*, 2018 WL 4386087, at *12 (S.D.N.Y. Sept. 13. 2018) (collecting cases and dismissing promissory fraud claim where plaintiff's

conclusory assertions "do not allege facts establishing that Defendants had no intention of following through with the alleged representations"). The TAC is devoid of any such factual allegations.

### 2. Plaintiff Fails to Allege Justifiable Reliance

Throughout the TAC, Plaintiff makes conclusory allegations that he "reasonably" or "justifiably" relied on Mr. Meyer's alleged representations. These legal allegations are not entitled to the presumption of truth even in connection with a motion to dismiss, and the factual allegations in the TAC are insufficient to establish justifiable reliance.[10] Plaintiff is not an infant, infirm, or otherwise a member of a diminished class warranting heightened protection. *See Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir.1997). Rather, he is—by his own telling—a sophisticated, experienced player in the film industry. *See* TAC ¶¶ 1 ("Newton is an award-winning filmmaker"); 13 ("Newton is an award-winning film director, producer, and screenwriter"); 24 (Newton's "award-winning career"). He therefore certainly had the means of evaluating and understanding the financing arrangements to which he agreed, and so "will not be heard to complain that he was induced to enter into the transaction by misrepresentations." *Schlaifer Nance & Co.*, 119 F.3d at 98. Based on Plaintiff's experience in the film industry, he was also no doubt familiar with the agent agreements and financing agreements central to any completed or highly evolved deals between counterparties.

Beyond his general experience in the film industry, Plaintiff's own allegations undermine any claim of justifiable reliance. For example, Plaintiff was at all times aware of Mr. Meyer's position at NBCU, and indeed in his dealings with Mr. Meyer sought specifically to work with

---

[10] Although the question of justifiable reliance is often fact-intensive, where, as here, the allegations permit no inference of justifiable reliance, "a court may find a plaintiff's reliance unreasonable as a matter of law." *Spirit Partners, L.P. v. Audiohighway.com*, 2000 WL 1593385, at *9 (S.D.N.Y. Oct. 25, 2000).

NBCU on his film projects. TAC ¶¶ 8, 14. Plaintiff could not have reasonably believed that Mr. Meyer was *also* acting as his personal talent agent. For another example, given Plaintiff's own allegations about the August 2017 mediation, he could not have justifiably relied on any purported "promises" made during the September 4, 2017, telephone conversation. *See id.* ¶ 95. Accordingly, the allegations in the TAC fail to establish Plaintiff's justifiable reliance, and so his fraudulent inducement claim should be dismissed.

### 3. Plaintiff Fails to Adequately Allege Damages

In actions for fraud—including fraudulent inducement—"[t]he true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong or what is known as the 'out-of-pocket' rule." *Lama Holding Co.*, 88 N.Y.2d at 421. "Under the out-of-pocket rule, there can be no recovery of profits which would have been realized in the absence of fraud." *Id.*

Plaintiff fails to allege concrete, out-of-pocket damages. In the TAC, he claims that, as a result of Mr. Meyer's alleged fraud, Plaintiff was induced to enter "a much less favorable film deal," TAC ¶ 40, and "forewent other opportunities to get [his] film projects financed, produced, and distributed," *id.* ¶ 95. But under settled law, "the loss of an alternative contractual bargain . . . cannot serve as a basis for fraud or misrepresentation damages because the loss of the bargain was undeterminable and speculative." *Lama Holding Co.*, 88 N.Y.2d at 422 (quotation omitted). Elsewhere, Plaintiff claims that his damages include "emotional distress," "damages to reputation," and "loss of career opportunities." TAC ¶ 97. These alleged injuries do not constitute an "actual pecuniary loss," and so they too cannot serve as the basis for his fraudulent inducement claim. *See, e.g.*, *Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd.*, 392 F. Supp. 3d 382, 398 (S.D.N.Y. 2019) (injury to reputation); *Passigila v. Northwell Health, Inc.*, 252 F. Supp. 3d 129, 140 (E.D.N.Y. 2017) (emotional injury). Accordingly, Plaintiff has not alleged recoverable damages, and his fraudulent inducement claim should be dismissed.

### C.  Plaintiff's Claim for Negligent Misrepresentation Should Be Dismissed

The elements of a claim for negligent misrepresentation are: "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *JAO Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007). Negligent misrepresentation claims are subject to the heightened pleading standard of Rule 9(b). *AIG Global Sec. Lending Corp.*, 254 F. Supp. 2d at 389. Because these elements overlap with the elements of Plaintiff's other purported claims, his negligent misrepresentation claim too is fatally deficient and should be dismissed for many of the same reasons.

### 1.  Plaintiff Fails to Allege the Existence of a Special Relationship

Much like his breach of fiduciary duty claim, Plaintiff's negligent misrepresentation claim fails on a foundational level because he fails to allege the existence of a special relationship. "Generally, . . . an arm's-length business relationship between sophisticated parties will not give rise to a confidential or fiduciary relationship that would support a cause of action for negligent misrepresentation." *J.P. Morgan Secs. Inc. v. Ader*, 127 A.D.3d 506, 507 (1st Dep't 2015). In the commercial context, a negligent misrepresentation claim requires "either actual privity of contract between the parties or a relationship so close as to approach that of privity." *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 623-24 (S.D.N.Y. 2012) (quotation omitted).

No actual or approximate privity of contract is alleged in the TAC. Plaintiff acknowledges Mr. Meyer's role at NBCU and admits that he sought to do business with NBCU. Moreover, none of the purported direct quotations from Mr. Meyer constitutes an offer or agreement to act as Plaintiff's personal talent agent. Plaintiff instead alleges, in conclusory fashion, that Mr. Meyer "had effective control of Newton's film efforts," TAC ¶ 22, but this is insufficient to save his claim. "The use of the merely conclusory allegation that such a relationship existed is insufficient

as a matter of law." *IDC Capital, LLC v. CodeSmart Holdings, Inc.*, 2020 WL 815733, at *5 (S.D.N.Y. Feb. 19, 2020) (quotation omitted). Nowhere in the TAC does Plaintiff plead any specific facts showing how Mr. Meyer allegedly exercised such control, and under settled law, this deficiency is fatal to his claim. *See, e.g.*, *Goldfarb v. Schwartz*, 26 A.D.3d 462, 463 (2d Dep't 2006).

### 2. Plaintiff Fails to Allege Any False or Incorrect Statements

In addition, Plaintiff fails to offer requisite statements of fact to support his claim of negligent misrepresentation against Mr. Meyer. As the Second Circuit has explained, "the alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition." *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20-21 (2d Cir. 2000) (collecting cases). All of the alleged misrepresentations on which Plaintiff's claim is premised involved statements of opinion, predictions of future expectations, or statements of future intention. *See, e.g.*, TAC ¶¶ 4 ("I believe everyone will get their money back once Josh was able [sic] to start filming this movie."), 20 ("[E]veryone will want to be in this movie" and "this film will get made."), 46 ("We'll find ways to get this movie financed and distributed", "Let's go sell it" and "I want my company to see it"). In an apparent effort to wave away this clear deficiency, Plaintiff baldly asserts that Mr. Meyer's statements were not "promises as to future performance," *id.* ¶ 101, but this conclusory allegation is belied by Plaintiff's own admission that Mr. Meyer's statements were "promises," *see, e.g.*, *id.* ¶¶ 23, 46, 95.

### 3. Plaintiff Fails to Adequately Allege Damages

Because negligent misrepresentation sounds in fraud, only actual pecuniary losses may form the basis of a negligent misrepresentation claim. *See Lama Holding Co.*, 88 N.Y.2d at 421. Mr. Meyer, however, fails to allege any concrete, out-of-pocket damages, and instead primarily alleges lost profits, which cannot support a negligent misrepresentation claim. *See, e.g.*, *Facie*

*Libre Assocs. I, LLC v. SecondMarket Holdings, Inc.*, 103 A.D.3d 565, 565 (1st Dep't 2013). The other categories of damages he claims, such as emotional distress, damage to reputation, and lost career opportunities, similarly do not constitute actual pecuniary loss and so are not recoverable on a theory of negligent misrepresentation. Accordingly, Plaintiff has failed to allege any permissible damages, and his negligent misrepresentation should be dismissed.

## II.    The TAC Should Be Dismissed for Lack of Personal Jurisdiction

In addition to and independent of the complete lack of legal merit of Plaintiff's purported claims, the allegations in the TAC are entirely insufficient to establish that this Court has personal jurisdiction over Mr. Meyer. At a minimum, the TAC should be dismissed for this reason as well.

The exercise of specific personal jurisdiction over an out-of-state defendant is proper only where both the forum state's long-arm statute and the requirements of due process permit it.[11] *See, e.g.*, *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 169 (2d Cir. 2010); *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (N.Y. 2000). Accordingly, the Court must first determine both whether the New York long-arm statute provides a basis for personal jurisdiction over the defendant and, if so, whether exercising that jurisdiction would be permissible under the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 124 (2d Cir. 2002) ("*BBL II*"); *LaMarca*, 95 N.Y.2d at 214.

### A.    The New York Long-Arm Statute Does Not Permit Personal Jurisdiction

The New York long-arm statue permits jurisdiction over non-domiciliaries only in limited, enumerated circumstances. As relevant here, CPLR § 302(a) permits jurisdiction only where the

---

[11] Plaintiff does not contend in the TAC that Mr. Meyer is subject to general jurisdiction in New York. Nor could he be, because New York is not Mr. Meyer's "domicile," *Damiler AG v. Bauman*, 571 U.S. 117, 137 (2014), nor is this the the "exceptional case" where "an individual's contacts with a forum might be so extensive as to support general jurisdiction notwithstanding domicile elsewhere," *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017); *accord IMAX Corp. v. The Essel Grp.*, 154 A.D.3d 464, 465-66 (1st Dep't 2017).

defendant "transacts any business within the state," *id.* at (a)(1), "commits a tortious act within the state," *id.* at (a)(2), or "commits a tortious act without the state causing injury to person or property within the state," *id.* at (a)(3). [12] Under any of these prongs, jurisdiction will only lie where the plaintiff's cause of action "aris[es] from" the relevant in-state conduct. *Id.*

The TAC contains only one specific allegation of conduct by Mr. Meyer in New York. Specifically, Plaintiff alleges that in early November 2019, he spoke with Mr. Meyer by phone while Mr. Meyer was at the Mandarin Oriental hotel in New York. TAC ¶ 80. Plaintiff alleges that during this phone conversation, Mr. Meyer "said that his counsel had told him not to speak with Newton," and "that a mediation with Jane Doe was imminent and that afterwards 'We'll sit down and have a coffee.'" *Id.* Elsewhere, Plaintiff alleges that "many" of his telephone calls with Mr. Meyer occurred while Mr. Meyer "was in New York on business," *id.* ¶ 18, but these alleged calls are not linked to any specific statements or conduct.

These sparse allegations are insufficient to establish personal jurisdiction over Mr. Meyer under any of the prongs of CPLR § 302(a), because Plaintiff's purported causes of action do not arise out of any of Mr. Meyer's alleged in-state conduct. The only alleged conversation recounted with any specificity by Plaintiff is one where Mr. Meyer supposedly makes clear that Mr. Meyer is being advised *not* to make any representations to Plaintiff by Mr. Meyer's own legal counsel. This on its face belies the idea too that Mr. Meyer believed he owed any duties, fiduciary or otherwise, to Plaintiff at the time of the dialogue alleged by Plaintiff to have taken place in New York.

---

[12] CPLR § 302(a)(4) is not implicated here, because Plaintiff's claims do arise out of Mr. Meyer's ownership, use, or possession of real property in New York.

1. **Plaintiff's Causes of Action Do Not Arise Out of Mr. Meyer's Transaction of Business in New York**

CPLR § 302(a)(1) confers specific jurisdiction over a non-domiciliary defendant who, in person or through an agent, transacts any business in the state, if the plaintiff's cause of action arises from defendant's in-state transaction of business. CPLR § 302(a)(1); *Spiegel v. Schulmann*, 604 F.3d 72, 77 (2d Cir. 2010). A single transaction can be sufficient to fulfill this requirement, but only "so long as the relevant cause of action also arises from that transaction." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999) ("*BBL I*") (citing *George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 651 (1977)). Put differently, "a defendant's general connections with the forum are not enough." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017). Rather, "the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added).

Even assuming for purposes of this motion that Mr. Meyer transacted business in New York by virtue of his travel to and attendance at meetings in New York[13] in connection with his role with NBCU, a New York-headquartered company, Plaintiff fails to establish that any of his purported causes of action arise out of Mr. Meyer's New York conduct. Nowhere in the TAC does Plaintiff allege that Mr. Meyer, while in New York or in the course of any transaction of business in New York, (i) offered or agreed to act as his agent, (ii) committed any act constituting a breach of that purported relationship, or (iii) made any misrepresentation or other actionable statement. The single specific allegation of conduct in New York—a telephone conversation in November 2019—is not alleged to have been made in furtherance of Mr. Meyer's business in the state but

---

[13] Although Mr. Meyer traveled to New York for meetings in connection with his former role as Vice Chairman of NBCU, he did not have a dedicated office in New York.

instead was made to prevent discussions of business or anything else between the two at the time. And his vague allegation that he had "many" telephone conversations with Mr. Meyer while Mr. Meyer was in New York is not tied to any specific actionable conduct. Accordingly, Plaintiff's causes of action do not "arise out of" Mr. Meyer's transaction of business, and so CPLR § 302(a)(1) does not provide a basis for jurisdiction.

### 2. Plaintiff Fails to Allege that Mr. Meyer Committed a Tortious Act Within New York

CPLR § 302(a)(2) authorizes personal jurisdiction over a non-domiciliary who "commits a tortious act within the state." This subsection "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997). This requirement is construed literally. *See, e.g.*, *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 WL 825482, at *14 (S.D.N.Y. Mar. 2, 2017); *see also BBL I*, 171 F.3d at 790 ("a defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)"); *Kramer v. Vogl*, 17 N.Y.2d 27, 31 (1966) ("jurisdiction under 302 (subd. (a), par. 2) requires that a defendant's act of omission occur within the State"). Accordingly, a complaint will be dismissed if the plaintiff does not allege specific facts or submit evidence indicating that the defendant was physically present in New York at the time it committed the actionable conduct. *See, e.g.*, *Capital Records, L.L.C. v. SeeqPod, Inc.*, 2010 WL 481228, at *5 (S.D.N.Y. Feb. 1, 2010).

Again, nowhere in the TAC does Plaintiff allege that Mr. Meyer was physically present in New York when he allegedly (i) offered or agreed to act as Plaintiff's agent, (ii) committed any act constituting a breach of that purported relationship, or (iii) made any misrepresentation or other actionable statement. In the TAC, Plaintiff recites numerous alleged fraudulent and/or misleading statements by Mr. Meyer, many of which purport to be direct quotations, but, pointedly, he never

alleges that any of these statements were made in New York. Indeed, Plaintiff's initial meeting with Mr. Meyer, at which Mr. Meyer allegedly offered Plaintiff his "help and advice," is alleged to have occurred at "Universal Studios"—and not in New York. TAC ¶ 21. And none of the specific statements he *does* claim were made in New York are alleged to be fraudulent or misleading. *See id.* ¶ 80. Accordingly, under settled law, CPLR § 302(a)(2) cannot provide a basis for jurisdiction over Mr. Meyer. *See, e.g.*, *V Cars, LLC v. Israel Corp.*, 902 F. Supp. 2d 349, 365 (S.D.N.Y. 2012) ("There is no evidence, however, that Steinwascher and Gilad made actionable misrepresentations while meeting with V Cars in New York.").

### 3. Plaintiff Fails to Allege that Mr. Meyer Caused Injury in New York

CPLR § 302(a)(3) permits a court to exercise personal jurisdiction over an out-of-state defendant if the defendant "commits a tortious act without the state causing injury to person or property within the state" and certain additional requirements are met. Subsection (a)(3) is inapplicable here, however, because Plaintiff has not established that Mr. Meyer "caus[ed] injury to person or property within [New York]." Plaintiff is not a New York resident—indeed, he is a citizen and resident of the United Kingdom. *See* TAC ¶ 13, 16. Nor does he allege that he was present in New York during any of the events alleged in the TAC. *Cf. Kelly v. MD Buyline, Inc.*, 2 F. Supp. 2d 420, 434 (S.D.N.Y. 1998) ("a fraudulent statement made outside New York and directed to a person in New York is a tort committed outside the state and must be assessed under section 302(a)(3)"). And nowhere does he allege—nor could he—that he suffered any injury in New York.

Because the requirements of the New York long-arm statute are not satisfied, the TAC must be dismissed for lack of personal jurisdiction over Mr. Meyer.

**B.      Jurisdiction Would Not Be Permissible Under the Due Process Clause**

Because the New York long-arm statute does not permit personal jurisdiction over Mr. Meyer, it is unnecessary to assess whether jurisdiction would be permissible under the Due Process Clause. *See, e.g.*, *Bensusan Rest.*, 126 F.3d at 27; *AVRA Surgical Robotics, Inc. v. Gombert*, 41 F. Supp. 3d 350, 362 (S.D.N.Y. 2014). But even if that were not the case, the requirements of the Due Process Clause would not be satisfied here.

In order for the exercise of personal jurisdiction to be constitutionally proper, a defendant must have sufficient "minimum contacts" with the forum state, and the exercise of jurisdiction must be "reasonable" under the circumstances of the particular case. *See, e.g.*, *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 169-70 (2d Cir. 2013). Neither requirement is satisfied here. As to the first, "minimum contacts" requires, among other things, that "the claim arises out of, or relates to, the defendant's contacts with the forum." *BBL II*, 305 F.3d at 127. But as explained above, Plaintiff's causes of action do not "arise[] out of" Mr. Meyer's contacts with New York. Plaintiff's assertion of jurisdiction thus fails on a foundational level.

As to the second, the exercise of jurisdiction over Mr. Meyer would not be reasonable. To evaluate reasonableness, courts consider five factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *BBL II*, 305 F.3d at 129. None of these factors favor the exercise of jurisdiction, and several—in particular the second, third, and fourth— weigh heavily against it.

As explained above, none of the allegedly actionable conduct took place in New York. In fact, the events alleged in the TAC appear exclusively or almost exclusively to have occurred in California rather than in New York. Furthermore, Plaintiff is not a resident of New York—he is a citizen and resident of the United Kingdom—and he was not present in New York during any of the alleged events that give rise to his purported claims, and did not suffer any injury in New York. In addition, many of the key witnesses and participants in the alleged events, including Mr. Meyer, are located in California. For these reasons, New York has little or no compelling interest in adjudicating this case; litigating this case in New York would not serve Plaintiff's interest in obtaining convenient and effective relief; and judicial efficiency would not be served by litigating this case in New York.

The remaining two factors further weigh against the exercise of jurisdiction by this Court. Mr. Meyer is a resident of California and it is unclear what, if any, witnesses are located in New York. The prospect of litigating this matter across the country for no obvious reason—especially given the Plaintiff's residence in England and absence of connections to New York—is in itself a burden not only to Mr. Meyer, but to others that may be involved. Furthermore, although New York certainly has an interest in protecting its citizens from allegedly tortious conduct, that interest is not implicated here—Plaintiff is not a citizen or resident of New York, and he does not claim to have been defrauded or injured in New York. Accordingly, the exercise of jurisdiction over Mr. Meyer would be unreasonable and would not comport with the requirements of the Due Process Clause.

In short, Plaintiff's allegations, even if taken to be true, involve a dispute between a British resident (Plaintiff) and a California resident (Mr. Meyer), over conduct that is not specifically alleged to have taken place in New York and without any harm being suffered by a New York

resident. If anything, Plaintiff's TAC is a model for the type of lawsuit that must be dismissed for lack of jurisdiction.

## **<u>CONCLUSION</u>**

For all of the foregoing reasons, the Court should dismiss Plaintiff's TAC with prejudice, and grant Mr. Meyer such other and further relief as the Court deems just and proper.

Dated: July 26, 2022
      New York, New York

Respectfully submitted,

*[signature]*

E. Danya Perry
Samidh Guha
Alexander K. Parachini
PERRY GUHA LLP
1740 Broadway, 15th Floor
New York, NY 10019
Email: dperry@perryguha.com
Email: sguha@perryguha.com
Email: aparachini@perryguha.com
Telephone: (212) 399-8330
Facsimile: (212) 399-8331

*Attorneys for Defendant Ronald Meyer*